Mirandona vs. Burg.

No. 13,032.

J. P. MIRANDONA VS. NICHOLAS BURG.

1. BROKEN CONTRACT.—Damages actually shown, growing out of the breach of contract, were allowed.

2. CLAIM FOR INTEREST ON MONEY BORROWED.—Claim for interest on money borrowed by plaintiff to carry out the contract was not allowed, for the reason, that it was not made clear that plaintiff borrowed the amount for the *purpose* alleged. If it was borrowed for that purpose, it was never tendered to defendant; on the contrary, a large part of the money referred to was used by plaintiff in his own business.

3. PROSPECTIVE PROFITS.—Future profits are generally too remote to furnish a basis for damages. Amount claimed for probable and speculative profits was not allowed.

ON APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*W. O. Hart* and *Frank B. Thomas* for Plaintiff and Appellant.

*W. S. Benedict* for Defendant and Appellant.

Argued and submitted April 7, 1899.
Opinion handed down April 17, 1899.
Rehearing refused May 29, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiff brought this suit against the defendant for damages, he alleged, growing out of the failure of his vendor to complete his contract of sale in accordance with agreement.

He averred that on the 13th day of January, 1896, he entered into a written agreement with the defendant, in which the latter bound himself to sell to him the stock in a grocery store in this city at market value, to be appraised by two appraisers, one to be selected by him, and the other by the defendant; and that he deposited one hundred dollars current money. The agreement between these parties further shows, that the defendant was to lease the place in which he carried on his grocery business, at sixty dollars per month, for five years, with privilege of renewal at the end of that time.

He alleges, that, on February 4th, 1896, defendant refused to carry out the terms and conditions of the agreement; that is, refused to sell his stock or lease his premises.

That he placed him in default, and brought suit to compel him to a specific performance, which resulted in a judgment, refusing to decree a specific performance, but giving to him the right to claim the damages resulting from defendant's refusal to complete the sale.

He alleges that his profits would have been large if he had gotten possession of the property, as he expected, when he made the purchase. He claims for the profits, ten thousand dollars.

He sets forth that he was informed by the defendant of the agreement that the stock of groceries would amount to six thousand dollars, and in order to be prepared to pay the price, he borrowed that amount at 8 *per cent.* interest for a term of years, upon which he will have to pay nine hundred and sixty dollars interest, and that the sum remained in deposit unused by him.

He, also, alleges that the sale put him at the expense of employing a clerk, at a cost of $150; and that the fee of attorney employed by him to advise and act for him was two hundred and fifty dollars, making a total of $11,460.00, for which he asks judgment.

Defendant filed an exception, charging that plaintiff's petition was vague, and that it was necessary, in order to enable defendant to answer, that plaintiff should aver from whom and when he borrowed the $6,000.00; to whom and when he paid the $960.00 interest; the name of the clerk and his legal adviser. The exception was overruled.

Defendant, reserving his exception, then filed an answer pleading the general denial.

Plaintiff swears that the agreement was entered into as he alleged, and that he exerted his best endeavors to carry it out; that he made arrangements to have the funds to pay the price; that he executed a mortgage on the 12th or 13th day of February, 1896, to get the loan for which he had no use, save to complete his purchase; that he also employed a clerk at five dollars per week and board, an employment he deemed necessary during five months, on account of his purchase; and that the fee of counsel employed by him to see to his interest in the matter of the purchase was two hundred and fifty dollars, as alleged; that defendant, at the time of their agreement, gave him an idea of the daily sales in his grocery, and that it showed a handsome return on the amount invested.

Plaintiff also swore that ten *per cent.* was a fair percentage of profit in a retail grocery business.

On cross-examination, it was said by witness that defendant had sent him word on the third or fourth of February, 1896, that the agreement was at an end, and that he would not sell.

Other witnesses for plaintiff testified that the profits of the retail grocery business are from five to six *per cent.*

The court *a qua* during the trial, ruled that defendant could show in mitigation of damages that an offer to compromise was made prior to the filing of plaintiff's petition in the case brought for specific performance, which did not succeed. Evidence was admitted to prove the offer.

The District Court rendered judgment for the plaintiff against the defendant, in the sum of five hundred and thirty-seven and 50-100 dollars, with legal interest from the date of the judgment.

Plaintiff and defendant each appeals.

First. The only question, in a strict sense, now before the court, is a question of damages resulting from the non-performance of the contract, as reserved by the Supreme Court in the case of Mirandona vs. Burg, 49th Ann., 656.

In the cited case, the court concluded that no redress could be had by plaintiff save for damages, and that for reasons stated, it was not proper to compel the defendant to perform the contract. A second examination into the facts, as made to appear in the case now before us for decision, confirms us of the correctness of the views expressed; there were facts connected with the negotiations between the parties, that would have rendered difficult the enforcement of a judgment requiring specific performance.

Passing to the question of the amount of damages, we find that the sum allowed was more than should have been allowed for damages actually shown. It covers the hire of the clerk whom plaintiff employed and the fee of plaintiff's attorney.

There were mitigating circumstances in the case, and, for that reason, we think that the damages awarded should be forty-five dollars for clerk hire; one hundred and fifty dollars fee of attorney.

Second. The claim made by plaintiff for interest, we think, was properly rejected by the court.

While there was, perhaps, no absolute necessity that plaintiff should have informed the defendant that he had borrowed the amount to pay

the price of his purchase from defendant, yet, it is not entirely without significance that no mention was made by plaintiff of money that he had borrowed, when plaintiff was informed that the contract looking to defendant's sale to plaintiff would not be consummated by delivery.

Moreover, the loan of the amount of six thousand dollars was made to plaintiff by one of the banks, a few days after defendant had informed plaintiff of his unwillingness to continue the negotiations. No one would readily infer that money would be borrowed to pay the price of a sale after the seller's recall of his promise, unless to make certain his position regarding the sale, he desired it to make a tender and deposit of the amount. Here, nothing of the kind was done.

Not only was no tender or deposit made, but, it appears that the amount borrowed, or a goodly portion of it, at least, was used by plaintiff in the course of his own business.

Defendant could scarcely be held for interest on money used by plaintiff, or not actually deposited, or in any manner tendered to complete the sale.

Third. This brings us to a consideration of the claim for profits he would have made, if the defendant had carried out his agreement, and sold his business to plaintiff.

This court has, not long since, in a well considered case, in substance held, that the profits upon a contract depending upon uncertain future results, could not be with any degree of certainty, fixed, inasmuch as the calculation would, necessarily, be conjectural.

There was uncertainty as to whether plaintiff would have succeeded at all in realizing profits. The defendant and his son swore that no profit was realized from the business for a year after the date of the asserted sale made by defendant to the plaintiff.

It would be difficult to believe that such was, in fact, the case; at the same time, it would not be possible to find the amount of profits realized, without any evidence showing how much it was.

In Schleider vs. Dielman *et al.*, 44th Ann., 462, the *syllabus*, indicating the principle passed upon, reads:

"As a general rule, the *future profits* of a contract cannot be included in the injury suffered by its breach; mainly for the reason that they depend upon so many and various contingencies that it is impossible for a court or a jury to arrive at any definite determination

of the actual loss by any trustworthy method. They are open to the objection of remoteness, as well as of uncertainty."

Plaintiff's claim for damages, based on *future profits* of the business he would have realized, is as uncertain as it was in the case cited.

"Anticipated profits cannot always be recovered." United States vs. Behan, 110 U. S. Rep., 344.

At best, defendant's profits, we infer, were small. Plaintiff was not acquainted with the former's customers, and with the business as conducted in the locality in which defendant's grocery was. There was great uncertainty and contingency as to whether gain would have been derived at all.

The questions presented were orally argued. No briefs were filed.

For reasons assigned, the judgment appealed from is amended by reducing the amount of damages to one hundred and ninety-five dollars, making with the "earnest money," the sum of two hundred and ninety-five dollars, with legal interest thereon from October 19th, 1898, and as amended, the judgment is affirmed at the cost of plaintiff in the Supreme Court; *i. e.*, plaintiff pays costs of appeal.

MONROE, J., takes no part.