(107 So. 780)

Nos. 25288, 25576.

## BENNETT v. WEINBERGER et al.

(March 1, 1926. Rehearing Denied March 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant** ☞129(4) — **Lessor, breaching lease of premises for retail mercantile business by withholding possession one week, held liable to lessees for expenses during that time of employees hired.**

Lessor, breaching lease of premises leased for retail mercantile business by withholding possession one week, *held* liable to lessees for expenses during that time of employees hired by lessees.

2. **Landlord and tenant** ☞129(4) — **Lessor, breaching lease of premises for retail mercantile business by withholding possession one week, held liable to lessees for drayage and extra handling of merchandise necessitated thereby.**

Lessor, breaching lease of premises for retail mercantile business by withholding possession one week, *held* liable to lessees for amount paid by them for drayage and extra handling of merchandise necessitated thereby.

3. **Landlord and tenant** ☞129(3)—**Evidence of lessees' loss of profits during week lessor wrongfully withheld possession of business premises held insufficient to form basis for judgment in lessees' favor (Civ. Code, art. 1934).**

Evidence of lessees' loss of profits during week lessor wrongfully withheld possession of business premises *held* insufficient, under Civ. Code, art. 1934, to form basis for judgment in lessees' favor.

4. **Landlord and tenant** ☞129(3)—**Evidence of depreciation of lessees' merchandise during week lessor wrongfully withheld possession of business premises held insufficient to predicate judgment in lessees' favor.**

Evidence of depreciation of lessees' merchandise during week lessor wrongfully withheld possession of business premises *held* insufficient to predicate judgment in lessees' favor.

5. **Landlord and tenant** ☞116(5) — **Under monthly lease whereby lessees agreed to vacate on 10 days' notice, and to give 15 days' notice of intention to renew, lessor's failure to give notice to vacate did not renew lease, in absence of notice from lessees to renew.**

Under monthly lease under which lessees agreed to vacate on receipt of 10 days' notice by lessor, and to give 15 days' notice of intention to renew, failure of lessor to give notice to vacate did not renew lease, in absence of notice from lessees to renew.

6. **Landlord and tenant** ☞116(4) — **Under monthly lease calling for 15 days' notice by lessees of intention to renew and 10 days' notice by lessor to vacate, lessees' written notice and lessor's reply of acceptance constituted renewal only for one month.**

Under monthly lease calling for 15 days' notice by lessees of intention to renew and 10 days' notice by lessor to vacate, *held*, that lessees' written notice and lessor's reply of acceptance constituted renewal only for one month, and not a new contract of lease.

7. **Landlord and tenant** ☞116(4) — **Lessees, who gave no notice of renewal of monthly lease, as required by lease, were bound to surrender premises on expiration of lease.**

Lessees, who gave no notice of renewal of monthly lease, which lease required them to give, were bound to surrender premises on expiration of lease.

8. Landlord and tenant ⬅️144—Where refusal of warrantors, prior lessees, to surrender premises at expiration of lease, caused defendant lessors to breach their lease to plaintiffs, warrantors were liable to defendants.

Where refusal of warrantors, as prior lessees, to surrender leased premises at expiration of lease, caused defendant lessors to breach their lease to plaintiffs by withholding premises for one week warrantors were liable to defendants in amount their conduct rendered defendants liable to plaintiffs.

9. Landlord and tenant ⬅️144 — Defendants' former lessees, whose refusal to surrender premises at expiration of lease was sole cause of loss to new lessees, suing defendants for breach of lease, held properly called in warranty.

Defendants' former lessees, whose refusal to surrender premises at expiration of lease was sole cause of loss suffered by plaintiffs, as new lessees, suing defendants for breach of lease, *held* properly called in warranty, despite absence of privity of contract between plaintiffs and former lessees.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Action by Bernard Bennett against Charles Weinberger and another, wherein Handelman & Dreyfous were called in warranty. From a judgment for plaintiff, granting less relief than prayed, certain parties appeal. Affirmed.

Rehearing denied; ST. PAUL, J., dissenting.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellants Weinberger and Werlein.

Weiss, Yarrut & Stich, of New Orleans, for appellants Handelman & Dreyfous.

Lazarus, Weil & Lazarus, of New Orleans, for appellee.

THOMPSON, J. This is a suit by a lessee against his lessor for damages resulting from a breach of contract of lease; the breach being the failure of the lessor to deliver the premises at the time stipulated.

The plaintiff leased from the defendants the premises described in the petition for a period of 19 months, beginning March 1, 1921, and ending September 30, 1922, for the purpose of carrying on in said premises a retail mercantile business.

The premises were occupied at the time said lease was executed by Handelman & Dreyfous, who claimed under a prior lease from the defendants. The last-named lessees refused to surrender the property when demanded of them by the defendants, and proceedings for ejectment were instituted against them. A compromise was effected, under which the plaintiff obtained actual possession of the property on March 8th, one week after he should have received possession.

The damages claimed are said to have been occasioned by being deprived of the use of the property during this one week.

The demand consists of four items:

(1) Amount paid for clerks and employees; (2) amount paid for drayage, insurance, and extra handling of merchandise; (3) loss of profits on business that could have been done during the week of which plaintiff was deprived of the use of the property; and (4) depreciation of the value of the merchandise which plaintiff had on hand and had ordered for the opening of said store, a large portion of which was seasonable, and had to be disposed of before a change in the weather took place.

The district judge allowed the two first items, except $10 for extra insurance, and rejected the third and fourth items.

The only question presented as between plaintiff and defendants is as to the quantum of damages.

The defendants concede their liability for failure to deliver the property at the time agreed on.

[1] The evidence, in our opinion, sustains the finding of the trial judge. The plaintiff had purchased a large stock of merchandise in anticipation of moving into the property on March 1st. He was compelled, therefore, to engage beforehand and to assemble a large

force of clerks and laborers to open up and to carry on his business.

These he retained, and was justified in retaining, during the first week of March, hoping and expecting each succeeding day that he would be able to get possession of the property. He paid these clerks and laborers the amount stated in the first item. He so testified, and there is no proof contradicting him.

[2] The plaintiff also sustained the loss as stated in the second item, except as to $10 extra insurance.

The amount paid for extra drayage and extra hauling was due to the fact that the stock could not be placed in the store on March 1st, and had to be stored and again transferred when the plaintiff obtained possession of the store.

[3] The third and fourth items present a more serious situation.

The Civil Code (article 1934) provides that, where the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained and the profit of which he has been deprived.

This article of the Code has been considered in a number of cases by this court.

The more recent case is that of Goldsmith v. Virgin, 48 So. 279, 122 La. 831, wherein this court said:

"Defendant objects additionally that unearned profits are not legally demandable. That contention is one not sustainable in law, for article 1934 of the Revised Civil Code expressly declares that damages resulting from a breach of contract are the loss which 'he has sustained' and 'the profit of which he has been deprived.'"

The difficulty in this as in many of the cases arises from the failure of the plaintiff to make certain the loss he has sustained and the profit of which he has been deprived. The amount he claims is at most a mere guess or estimate, which is too uncertain and speculative to form the basis of a judgment of court. The only testimony is that of the plaintiff, and he bases his loss of profits for the first week of March on the amount of goods he sold from March 12th to April 12th, calculating 30 per cent. on the gross amount of average weekly sales, and deducting the expenses incurred during that period.

This evidence, it seems to us, is too unsatisfactory, and the profits which plaintiff claims he would have made are so remote, contingent, speculative, and uncertain, to form a basis for any judgment thereon in plaintiff's favor.

In the case of Ice Machine Co. v. McDonald, 19 So. 459, 48 La. Ann. 450, the court said:

"The damages claimed are uncertain and remote and for profits anticipated, which possibly never would have been realized. A similar question was decidedly against the allowing the amount claimed in Howard v. Stillwell & Bierce Mfg. Co., 11 S. Ct. 500, 139 U. S. 199, 35 L. Ed. 147."

And again in Schleider v. Dielman, 10 So. 934, 44 La. Ann. 462, it was said:

"As a general rule the future profits of a contract cannot be included in the injury suffered by its breach, mainly for the reason that they depend upon so many and various contingencies that it is impossible for a court or a jury to arrive at any definite determination of the actual loss by any trustworthy method. They are open to the objection of remoteness, as well as of uncertainty."

And in the more recent case of Mirandona v. Burg, 25 So. 982, 51 La. Ann. 1190, the court said:

"This court has, not long since, in a well-considered case, in substance held that the profits upon a contract depending upon uncertain future results could not be with any degree of certainty fixed, inasmuch as the calculation would necessarily be conjectural."

The expressions of the court in the cases cited are entirely applicable in this case.

The plaintiff's evidence as to the profits he would have made if he had gotten possession of the property on the 1st of March is no

more certain and definite than were the proof of the claims for damages in the cited cases.

[4] What has been already said is equally pertinent to the fourth item of damages.

We are unable to conceive how there could be very much depreciation in one week's time, due to a change in any particular season of the year. There is under ordinary weather conditions very little appreciable change between the first and the second week of March of the same year. The goods on hand, it seems to us, would be as seasonable in the second as they were in the first week of the month. At all events the proof fails to sustain this item of damage.

The plaintiff no doubt suffered some damage by not being able to open his store during the first week of March, but under the evidence the court is unable to fix the amount of such loss with any degree of accuracy or certainty.

This is not a case in which the court would be authorized to make an arbitrary assessment of damages.

We therefore find no justification for increasing the amount allowed by the judgment below.

The defendants called their former lessees in warranty, and asked to recover against them the amount which they might be condemned to pay the plaintiff.

[5] The warrantors defend on the ground, first, that this is not a proper case for a call in warranty, there being no privity of contract between the plaintiff and the warrantors; and, second, that the lease the warrantors held from defendants was reconducted for the month of March, and therefore the lessees were justified in retaining possession of the property.

We shall consider the two defenses in inverse order, since, if there was a reconduction of the lease, as claimed, the defendant's demand against the warrantors would fall.

The lease was entered into on October 28, 1920, and was a monthly lease; the lessee agreeing to occupy the premises for a minimum period of two months. It was further agreed that the lessee would vacate the premises at any time upon receipt of a 10 days' notice from the lessor to vacate, and that, if the lessee desired to continue the lease from month to month, notice should be given to the lessor of that intention 15 days prior to the expiration of each month.

It is admitted that no notice was ever given to the lessee to vacate, and no notice was given by the lessee to the lessor of an intention to renew the lease for the month of March, 1921.

It is upon the failure of the lessor to give the notice to vacate that the lessee bases the claim of reconduction for the month of March.

There is no ambiguity in the wording of the lease, and no doubt of the intention of the parties as expressed in the lease. While the lease was a monthly lease, the lessor reserved the right to terminate it and retake possession at any time on giving 10 days' prior notice. But, if such a notice was not given, it yet was incumbent on the lessee, after the first two months, to give to the lessor a notice of intention to renew the lease for each succeeding month 15 days prior to the expiration of the current month. This was the construction placed on the lease by the lessee, for the lessee gave the required notice in December, 1920, of intention to renew for the month of January, 1921, and a like notice was given in January for the renewal for February, 1921.

[6] The last-named renewal was effected by a letter from the lessee to the lessor, and an acceptance of the offer to renew by a letter from lessor to the lessee. It was suggested in argument, and renewed in brief of warrantors, that this correspondence created a new contract of lease, in which no agreement as to notice was made, and that therefore the lessee was not required to give any notice, but, on the contrary, it was incumbent on the lessor to give the notice of intention

to retake the property before the expiration of the month of February.

The contention is obviously untenable. The original contract of lease had not been abrogated. The lessee continued in possession up until March 1st under that contract. The letter or offer of renewal for the month of February was clearly prompted by the stipulation as to notice contained in the original contract, and was nothing more than an exercise of the option to renew that contract. The answer of defendants and call in warranty expressly alleged that the warrantors exercised the option to renew the contract on January 15th for the month of February, on the same terms and conditions as contained in the original lease, and this was expressly admitted in the answer of the warrantors.

From which it follows that no new and independent contract of lease was effected for the month of February by the letters referred to, but a renewal and continuance of the original contract, with all of its conditions and stipulations as to notice.

[7] The lessees having failed to give the required notice of renewal for the month of March, it was their duty to have surrendered the property on that date to the lessors.

[8] On the question of the right to call in warranty we are of the opinion that the facts of this case authorized the call.

It was the refusal of the warrantors to turn the leased premises back to their lessor at the expiration of the lease that caused the defendants to breach their contract with the plaintiff.

There can be no question, therefore, of the liability of the warrantors to make good whatever amount their conduct caused the defendants to have to pay the plaintiff.

[9] There can be no good reason given why the warrantors should not be called upon in this suit to respond to that liability.

While it is true there was no privity of contract between the plaintiff and the warrantors, there was a direct contractual relation existing between the defendants and the warrantors.

The plaintiff has no concern with the issue between the defendants and the warrantors, but he is not complaining and has made no objection to the call in warranty.

In the case of Muntz v. Algiers & Gretna R. Co., 38 So. 410, 114 La. 437, this court expressly repudiated the doctrine that the right of a defendant to call in warranty was dependent on a privity of contract as between the plaintiff and the party called in warranty. In that case the court said:

"There is no doubt that some confusion and apparent conflict of authority exists upon the question at issue, but, whether dealing with the text of the law alone, or as interpreted by what we conceive to be the best considered opinions, we find it impossible to sustain the proposition that the right of a defendant to call in a warrantor depends upon the question of privity vel non between such warrantor and the plaintiff in the main action."

It is true in Bain v. Arthur, 55 So. 734, 129 La. 143, it was held that a surety could not call its indemnitors in warranty under a special contract of indemnity.

The above holding can hardly be said to be applicable in the present case. In the cited case the indemnitors obligated themselves "to hold and keep harmless the company from and against any and all loss, damages, costs," etc., and the court held that there was no obligation to pay the whole or a part of a debt due by another to a third person and hence there was no personal warranty.

In the present case the act of the warrantors was the sole and direct cause of the loss suffered by the plaintiff. There was no intervening culpable act on the part of the defendants. The latter complied with their contract with the plaintiff by delivering possession of the property as soon as they dispossessed the warrantors.

In such circumstances we are of the opin-

ion that the call in warranty was properly made.

For the reasons assigned, the judgment appealed from is affirmed.

ROGERS, J., recused.