190 So. 383

**SHEPARD REALTY CO., Inc., v. UNITED SHOE STORES CO., Inc.**

**No. 34723.**

May 29, 1939.

Rehearing Denied June 26, 1939.

HIGGINS, J., dissenting.

Cook, Cook & Egan, of Shreveport, and Charles J. Rivet, of New Orleans, for appellant.

Herold, Cousin & Herold, of Shreveport, for appellee.

ODOM, Justice.

This is a suit to collect $149,699.94, alleged to be due plaintiff by defendant under a lease contract. The defendant in limine pleaded the prescription of three years under Article 3538 of the Revised Civil Code, which provides that actions "for arrearages of rent charge, annuities and alimony, or of the hire of movables and immovables" are prescribed by three years.

This plea seems to have been heard and decided on the face of the pleadings, and was overruled. Subsequently defendant filed a plea, alleging that "each and every demand of the plaintiff herein is barred by the prescription of three years liberandi causa".

Before this plea was taken up, defendant filed an amendment thereto, in which it set out in detail the facts and circumstances on which it relied to support the plea. Defendant moved for a separate trial of the plea, which was granted. Testimony was adduced in support of the plea by defendant and in opposition thereto, by plaintiff. After the testimony pro and con had been heard, the following judgment was rendered:

"In this cause, by reason of the law and the evidence being in favor thereof, and for the written reasons assigned,

"It is ordered, adjudged and decreed that the plea of prescription of three years herein filed by the defendant be and the same is hereby sustained as to all claims asserted in the petition, except the claim insofar as it relates to the stock deposited by Frank Katzenstein, as to which—and as to which only—it is overruled."

The plaintiff appealed from this judgment.

In their brief filed in this court, counsel for appellant advanced the argument that the plea of prescription filed by defendant was technically insufficient because it failed to cite the particular article of the Civil Code on which it was founded. To meet this objection, counsel for appellee, before argument, filed in this court a reiteration of its plea, reciting that "appellee now says that its plea is rested upon Article 3538 of the Civil Code (as held below); and now re-pleads the same in bar of plaintiff's demand".

The question presented therefore is whether the three-year prescription, as provided in Article 3538 of the Code, is applicable, and this involves another question, which is whether this is a suit to collect "arrearages" for the "hire of movables and immovables".

Counsel for appellee argue that it is such a suit, and the trial judge so considered it. But counsel for appellant say it is a suit

for damages for the breach of a lease contract and that the prescriptive period applicable is ten, and not three, years.

■■ The settled rule is that the character of the action determines the prescription applicable thereto. Antoine v. Franichevich, 184 La. 612, 167 So. 98, and the cases there cited. To determine the character of the action it is necessary to consider the facts on which the action is based and plaintiff's pleadings and the documents annexed thereto.

The facts are that, by written contract dated May 17, 1929, M. S. and Blanche Moser Hart leased to United Shoe Stores Co., Inc., appellee, certain commercial property in the City of Mobile, Alabama, for a period of 20 years beginning November 1, 1932. The lessee agreed to pay to the lessors as net rent the sum of $130,000 for the full 20-year period, the amount to be paid in monthly installments as follows: from November 1, 1932, to October 31, 1942, $500 on the first day of each month, and from November 1, 1942, to October 31, 1952, $583.33 on the first day of each month—or $60,000 for the first ten years, and $70,000 for the second ten-year period, the installments to be evidenced by notes executed by the lessee. The notes were never executed.

In the third paragraph of the lease contract, it was stipulated that, as an additional consideration for the lease, the lessee should pay to the lessors, punctually as they accrue, all legal state, city, county, municipal, federal, and other taxes as were then or which might thereafter be levied upon or against the leased property, and should pay all sums assessed against the property for paving, drainage, and other improvements during the entire period of the lease.

In the fourth paragraph of the contract it is provided that, as further consideration of the lease, the lessee was to pay to the lessor, punctually as they accrue, the amounts of premiums for insurance against loss or damage by fire and tornado, the premiums on rent insurance and public liability insurance, the amount of the liability insurance to be $10,000 and taken out in the joint names of the lessors and the lessee.

Paragraph 22 of the contract reads in part as follows:

"Simultaneously with the signing of this lease, lessee will deposit in escrow with the Merchants National Bank, Mobile, Alabama, the (12½) twelve and one half shares of fully paid stock of the Shreveport Mutual Building Association, of Shreveport, Louisiana, of the face value of $200.00 per share, which will be held by said bank in escrow under the provisions of paragraph 'Twenty-Second' of this lease, until the commencement of the lease, at which time the lessee obligates itself to spend not less than the sum of twenty five hundred ($2500.00) dollars for improvements to the said property.

"Upon proper evidence being furnished by lessee of the completion of said improvements, free of all charges, and liens, the lessors agree that the said bank shall immediately return to the said lessee the said securities."

The fifth paragraph of the contract reads as follows: "At the commencement of this

lease, lessors shall deliver the premises to lessee in a tenantable condition, the walls, floors and roof to be in good condition; and Lessee agrees to return the same at the expiration of this lease in like condition, usual wear, tear and depreciation excepted."

Paragraph 11 of the contract reads as follows: "Should the lessee at any time violate any of the conditions of this lease, or fail to pay the rent, or any water bill, tax, levy assessment, insurance premium, material, labor, or repair bill, or other expense assumed by it under this lease, punctually at maturity, as stipulated, or fail to faithfully perform any promise made by it herein; and fail to remedy said default or violation of any condition of this lease within thirty (30) days after receipt of written notice of such default from lessors sent by registered mail, addressed to lessee at 606-608 Texas Street, Shreveport, Louisiana, or to such other address as lessee may designate in writing, or if lessee be adjudged a bankrupt or be placed in receivership, voluntarily or involuntarily, and the rent payments be not made by lessee, after giving the notice above provided for, the rent for the whole unexpired term of this lease, shall without further putting lessee in default, at once become due and exigible, and in such event lessors shall have the option, either at once to demand the rent for the whole term or immediately cancel this lease, lessee to remain responsible for all damages or losses suffered by lessors; lessee hereby assenting thereto and expressly waiving the legal notices of default or to vacate the premises, except the thirty (30) day notice above provided for."

On June 2, 1931, the lessors assigned the lease to Milton Investment Co., Inc., which corporation assigned it to the New York Life Insurance Co. on October 12, 1931, to secure an indebtedness which it owed the insurance company. The insurance company, by two acts of transfer, one dated December 1, 1933, and the other dated July 20, 1935, assigned it to the Shepard Realty Co., Inc., and on December 10, 1935, the Milton Investment Co. assigned it to the Shepard Realty Co., Inc., the plaintiff and appellant in this case.

Prior to November 1, 1932, the date on which the lease was to begin, a controversy arose between the Milton Investment Co., Inc., the then owner of the lease by assignment from the original lessors, and the United Shoe Stores Co., Inc., the lessee, as to whether the building was in a tenantable condition as provided in Paragraph 5 of the lease contract. The lessor contended that it was. The lessee contended that it was not. As to this point, no agreement was reached, and as a result of this disagreement the lessee refused to take possession of the building and never at any time occupied it.

On November 3, 1932, one day after the lease was to begin, the Milton Investment Co., Inc., wrote the following letter to the United Shoe Stores Co., Inc.:

"This will acknowledge receipt of your letter of November 1st, with reference to the lease you hold on the property #119–21 Dauphin Street, Mobile, Alabama.

"In reply thereto, wish to state that the building is in a tenantable condition, ready for your occupancy, as previously advised, and the keys are available at #12 S. Conception Street, Mobile, Alabama.

"This is to inform you that in accordance with the terms of your lease, we are hereby giving you formal notice to pay the rent, and should you fail to pay same within the specified time, suit will be brought against you for the entire amount under the lease, according to Clause Eleven of said lease.

"For your information, we herewith enclose letter from Security Roofing Company, Inc., Mobile, Alabama, certifying that the roof is in good condition."

On December 6, following, Brown & Kohn, attorneys representing Milton Investment Co., Inc., wrote and sent by registered mail the following letter to the United Shoe Stores Co., Inc.:

"We represent Milton Investment Company, Incorporated, the present owner of the property on the south side of Dauphin Street between Royal and St. Emanuel Streets, in the City of Mobile, Alabama, leased by you from M. S. Hart and Blanche Moser Hart. On behalf of said company, we hereby make demand upon you for the payment by you to said company, which has its principal office in Mobile, Alabama, of the sum of one hundred and thirty thousand ($130,000.00) dollars now due and payable by you under the terms of the said lease. We have been instructed to file suit against you unless this payment is promptly made. In addition to the above amount which is now due, there will be due by you from time to time taxes and other items under the provisions of the said lease, which the Milton Investment Company, Incorporated, expects you to pay as the same accrue.

"Yours truly,
"(Signed) "Brown & Kohn"

The letter quoted above, dated November 3, 1932, written by the Milton Investment Co., Inc., to United Shoe Stores Co., Inc., was unquestionably intended to be a notice of default, as provided in Paragraph 11 of the lease contract, quoted above. That paragraph provides that, should the lessee at any time violate any of the conditions of the lease, the lessor might, at the expiration of 30 days after receipt of written notice of such default, demand the rent for the whole term. Clearly the lessor intended to exercise the option granted in Paragraph 11 of declaring the rentals for the entire period of the lease due and exigible.

The present suit was filed in the district court of Caddo Parish on December 20, 1935, more than three years after the lapse of the 30-day period, specified in Paragraph 11 of the contract, following the notice of default given by plaintiff's letter dated November 3, 1932, and the letter of plaintiff's attorney giving notice that suit would be filed for the full amount of the accelerated rental payments.

This is the basis for appellee's contention that the prescriptive period of three years, as provided in Article 3538 of the Code, is applicable.

As to the character of the suit brought, we note that plaintiff alleged in Paragraph 3 of its petition that "the lessee agreed to pay to lessors a net rent of one hundred thirty thousand dollars ($130,000.00), in installments, on the first day of each and every succeeding month of the term, beginning on November 1st, 1932, to October 31, 1942, the sum of Five hundred dollars ($500.00) per month; from November 1st, 1942, to October 31, 1952, the monthly installment of Five Hundred eighty-three & 33/100 ($583.33) dollars".

Paragraph 16 of plaintiff's petition refers to the eleventh paragraph of the lease contract, and alleges:

"that pursuant to the said paragraph notice was given to the lessee on or about December 6, 1932, by registered mail addressed to it at Number 606-608 Texas Street, in the City of Shreveport, Louisiana, as shown by a copy of the said letter from Messrs. Brown & Kohn, attorneys for the lessor, attached hereto and made a part hereof, and marked 'Exhibit I'."

In Paragraph 17 of the petition it is alleged that plaintiff is informed and believes that said letter was received by the defendant on or about December 7 or 8 of 1932 and that "notwithstanding this demand it has failed to pay the rent, the taxes, the insurance, or any other items which it was obligated to pay under the terms of the lease".

Paragraph 18 of the petition refers to "an itemized statement which is attached hereto and made a part hereof, and marked 'Exhibit J,'". This is the statement on which the full amount claimed and sued for is based. The statement is found at Page 54 of the record. It is headed "Claim for rent, insurance and taxes". The following items appear on the statement:

"Rental:

| | |
|---|---|
| November 1, 1932 to Oct. 31, 1942—$6,000.00 per annum | $ 60,000.00 |
| November 1, 1942 to Oct. 31, 1952—7,000.00 per annum | 70,000.00 |
| | $130,000.00" |

Paragraph 19 of the petition reads in part as follows:

"That, as shown by the said statement, the net amount of the rent, plus the estimated insurance, taxes, etc., payable by the lessee under the terms of the lease, together with the repairs thereon, amount to a total of One hundred forty-nine thousand, six hundred ninty-nine & 94/100 ($149,699.94) dollars".

These allegations, read in connection with the statement attached to and made a part of the petition and in connection with the letters above quoted, make it certain that the suit is brought for rent amounting to $130,000, the total amount due for the entire 20-year period of the lease.

The record shows also that, long prior to the date on which this suit was filed in the Louisiana courts, plaintiff brought a suit at law in the circuit court of Mobile County, Alabama, against the defendant, then authorized to do business in that state, for $130,000, the exact amount of the rent for the entire period of the lease. In that

suit the lease contract is referred to, and Count 2 of the petition reads as follows:

"Plaintiff claims of the defendant the further sum of One Hundred and Thirty Thousand Dollars ($130,000.00) due by the defendant to the plaintiff as rent for the following described property situated in the City of Mobile."

Then follows a description of the leased premises. It is then alleged that the lessee had defaulted on its contract, that 30 days' notice of default had been served, and that "the rent for the whole unexpired term of the lease * * * and the said rental is due the plaintiff by the defendant".

The following order of non-suit was entered in that case on June 2, 1932:

"This day in open Court came the parties with their attorneys, and plaintiff, in open Court on this day, take a non-suit."

Thus it is perfectly clear that, of the total amount sued for, the sum of $130,-000 is for rent or for the hire of an immovable, and therefore the prescriptive period of three years, as provided in Article 3538 of the Civil Code, is applicable to this part of the demand.

Under Paragraph 11 of the lease contract, the lessor had the option, upon the lessee's failure to "perform any promise made by it herein", after 30 days from notice of such default, "either at once to demand the rent for the whole term or immediately cancel this lease" and claim damages. It exercised the former and claimed rent, so that this is in no sense a suit for damages.

Counsel for appellant argue that this suit cannot be characterized as one for the collection of "arrearages" of rent or hire of an immovable, because the lessee never at any time had possession of the property; it never "enjoyed" the thing, and they refer to Article 2669 of the Civil Code, which provides that lease or hire of a thing is a contract by which "one party gives to the other the enjoyment of a thing". They say at page 11 of their brief:

"Where there has been no 'enjoyment' of a 'thing', as where the lessor fails to deliver the possession, or where the lessee refuses to take possession, there can be no action for arrearages of the hire of movables and immovables, because no price for 'the enjoyment of a thing' can be due, where there was never any 'enjoyment'."

They cite Grace v. Haas, 20 La.Ann. 73, and Bennett v. Weinberger, 160 La. 1001, 107 So. 780, in support of the rule that, where the lessor breaches the lease by refusing to give the lessee possession, lessor is liable to the lessee for damages resulting from the breach. But they cite no authority to support their statement that, in case the lessee refuses to take possession, the lessor's only remedy is to claim damages for the breach of the lease. We assume there are no cases to support such proposition, for, if there were, the very industrious and able counsel representing appellant would have found and cited them.

Counsel for appellee have cited two federal cases, each holding against appellant's contention on this point. One is Lamson Consolidated Stores Service Co. v. Bowland, 6 Cir., 114 F. 639, 641, where

Judge Lurton—later a justice of the United States Supreme Court—said:

"It is entirely competent to contract that the consequence of a default in the payment of an installment of interest for the use of money or of rent for the use of property, shall be the precipitancy of the maturity of the principal of the money loaned, or of future installments for the rental of the property in respect of which default has been made. Rent is the compensation for the use and enjoyment of the thing rented, and is ordinarily demandable whether the tenant actually enjoy the use and possession of the subject of the rent or not."

In the case of In re Mullings Clothing Co., D.C., 230 F. 681, 687, the court said:

"The petitioner says that his claim is not one for loss of rent, but asserts that it is one for the recovery of damages caused by breach of an agreement to lease, and that the damage is to be measured by the difference in the amount of rent which the bankruptcy corporation agreed, by the terms of the lease, to pay for the whole term and the amount which the new tenant, now in the premises, has agreed to pay for the balance of the term covered by the same lease. But with whatever name the petitioner has chosen to clothe his claim it must, in any event, be considered as one for rent only."

■ In the case at bar the parties agreed that, in case the lessee violated any condition of the lease or failed to perform any promise made, the lessor might at his option demand the rent for the whole term. In other words, the lessor might accelerate

rental payments, declare all of them due and payable. These payments became "arrearages"—were due and payable 30 days after notice of default was given.

It is common practice to insert acceleration clauses, not only in lease contracts, but in contracts evidencing credit sales as well. Such stipulations are lawful and are binding upon the parties.

In the alternative, counsel for appellant argue that, if the prescription of three years is applicable to the arrearages of rent claimed, it was improperly maintained, for the following reasons:

■ First, it is contended that the notice of default was improperly given, being neither addressed nor mailed as required by the contract. There is no merit in this contention. The contract provided that the notice should be sent by registered mail. The letter of the lessor was not sent by registered mail, but it is admitted that it was received. The purpose of the provision in the contract that such notice should be sent by registered mail no doubt was to furnish an easy method of proving receipt.

■ Secondly, it is contended that the notice was sent by the wrong party. This contention is based upon the fact that the lease contract had been assigned to the New York Life Insurance Co., which company, it is argued, should have sent the notice.

The New York Life Insurance Co. was never the owner of the lease. The record shows that the contract was assigned to the insurance company as collateral security for a debt. The formal assignment by the

Milton Investment Co. to the insurance company stipulates that the investment company should be entitled to receive the rents from the said property and the proceeds of any rent notes, "unless and until there be default by it in any of the terms and conditions of the said mortgage and unless and until the rents are intercepted by the New York Life Insurance Company". The mortgage referred to was one by the investment company in favor of the insurance company.

Thirdly, it is argued that the suit brought by plaintiff against the defendant in Alabama interrupted the running of prescription. As we have stated, plaintiff took a voluntary non-suit in that case; and it was held in Davis et al. v. Young, 35 La.Ann. 739, that:

"There exists no essential difference between a discontinuance and a voluntary non-suit. A suit in which plaintiff is non-suited, on motion of his counsel, does not interrupt prescription, whatever the intention may appear to the contrary. A voluntary non-suit is equivalent to an abandonment. R.C.C. 3485. Dennistoun v. Rist, 9 La.Ann. 464; (Smith v. Gibbon), 6 La.Ann. 684."

See also Cassou v. Robbert, 166 La. 101, 116 So. 714.

In support of their argument on this point, counsel for appellee cite the case of Guccione v. New Jersey Ins. Co., 167 So. 845, decided by the Orleans Court of Appeal. But that case is distinguishable from those decided by this court, cited above.

Fourthly, counsel for plaintiff say that prescription was interrupted by the deposit in escrow of 12½ shares of the stock of the Shreveport Mutual Building Association, which stock was still held in escrow at the time this suit was filed. It is settled that a pledge by a debtor to secure a debt operates a continuous acknowledgment of the debt by the pledgor and thereby prevents the running of prescription. But that settled doctrine has no application to this case, for the reason that the shares of stock were not deposited in escrow with the Merchants National Bank of Mobile to secure the payment of the rent, but to be held by the bank "until the commencement of the lease, at which time the lessee obligates itself to spend not less than the sum of twenty-five hundred ($2500.00) dollars for improvements to the said property". It is provided in Paragraph 22 of the lease contract that, "Upon proper evidence being furnished by lessee of the completion of the said improvements, free of all charges, and liens, the lessors agree that the said bank shall immediately return to the said lessee the said securities".

Lastly, it is contended that whatever effect the giving of notice of default might have had was modified by the agreement entered into between the parties on November 25, 1932. We find no merit in this suggestion. The agreement referred to was entered into after the lessee had refused to accept the property because, as contended by it, the premises were not in a tenantable condition, and after lessor had served notice of default on the lessee and demanded payment of the rent for the full

period of the lease, and at a time when litigation was contemplated between the parties. Such being the situation, it was agreed that a third party should lease the property "to minimize the loss to whichever of the parties * * * shall be unsuccessful in such litigation as may ensue to determine the liability of the United Shoe Stores Company, Incorporated under said contract". Clearly it was never intended that this agreement should be construed as a modification of the original contract, because the agreement closes with the following sentence:

"In other words, this agreement, being made solely to minimize the loss, shall not be used for any other purpose."

Plaintiff prayed that the shares of stock in the building and loan association, deposited in escrow, "be declared forfeited to petitioner", and that it be "recognized as the owner and entitled to the possession hereof".

There was judgment sustaining the plea of prescription of three years as to all claims except that relating to the stock, as to which it was overruled. That judgment, in so far as it relates to the claim for rent amounting to $130,000 is correct and must be affirmed. In so far as it relates to the stock, it should be affirmed because appellee has not moved to amend. But we cannot affirm the judgment in so far as it relates to the other demands made by plaintiff. It sued defendant for the rent amounting to $130,000, "plus the estimated insurance, taxes, etc., payable by the lessee under the terms of the lease, together with the repairs thereon", amounting to several thousand dollars.

The only prescription pleaded is that mentioned in Article 3538 of the Code, which is three years. That article says: "The following actions are prescribed by three years". Then follow eight separate and distinct clauses, specifying the character of claim to which the prescription is applicable. No 1 relates to claims for arrearages of rent charge, annuities, and alimony, or the hire of movables and immovables; No 2, to claims for money lent; No. 3, to accounts of overseers, clerks, teachers by the year or quarter; No. 4, to accounts of physicians, apothecaries, etc.; No. 5, to accounts of recorders, clerks, sheriffs, and attorneys; No. 6, to merchants' accounts; No. 7, to accounts of retailers of provisions or liquors; No. 8, to all other accounts.

Counsel for appellee argued the case orally before us and filed two briefs in support of the plea of prescription. Only one clause of Article 3538 of the Code has been referred to, and that is clause No. 1, which relates to arrearages of rent, annuities, alimony, or the hire of movables and immovables.

It was not argued in this court, nor was it claimed in the lower court, so far as the record discloses, that the additional sums demanded by plaintiff including "estimated insurance, taxes, etc., payable by the lessee under the terms of the lease, together with the repairs thereon", should be classed as claims for the hire of an immovable.

There is therefore no basis for a ruling in this case that the pleaded prescription is applicable to these items of the demand.

For the reasons assigned, the judgment appealed from, in so far as it relates to the claim of $130,000 for rents and in so far as it relates to the stock deposited in escrow, is affirmed; and is reversed and set aside in so far as it relates to other items demanded; appellant to pay costs.

LAND, J., absent.

HIGGINS, J., dissents and assigns reasons.

FOURNET, J., absent.

HIGGINS, Justice (dissenting).

It is my opinion that this is an action for damages for the alleged breach of an executory contract. The mere fact that one of the items of damage is the loss of rent does not give the suit the character of an action to recover rent any more than the alleged claims for the loss of insurance premiums, taxes and repairs could be said to place the suit in the classification of some other legal right of action. The whole basis of the plaintiff's suit is that the defendant, without justification, breached its contract of lease with the result that the plaintiff suffered certain losses consisting of the above items. I, therefore, cannot agree that this is an action to recover rent and that plaintiff's claim is prescribed by three years.

I respectfully dissent.