696 So.2d 196 (1997)
David WILLETT, Plaintiff Appellant/Appellee,
v.
PREMIER BANK, National Association, Cyril Hinds, and Johnny Hinds, DefendantsAppellees/Appellants.
No. 97-187.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1997.
*197 David Charles Laborde, Lafayette, for David Willett.
Calvin Theodore Guidry, Lafayette, for Premier Bank Nat. Assoc., et al.
Edward J. Milligan, Jr., Lafayette, for Cyril Hinds.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
SULLIVAN, Judge.
Plaintiff/defendant-in-reconvention, David Willett, appeals the trial court's judgment rendered in favor of defendant/plaintiff-inreconvention/cross-claim defendant, Cyril Hinds, which ordered Willett to pay Hinds $33,000.00, plus interest from judicial demand, as the total balance owed on two 1983 loans from Hinds to Willett. One loan for $75,000.00 was secured by Willett's pledge of 200 one ounce gold coins and was for the purchase of construction equipment. The other loan of $30,000.00 was not secured. Willett maintains that Hinds' action on the two loans has prescribed. He also seeks an increase in the trial court's award of $10,830.00 in attorney fees for his success on his main demand, by which the trial court ordered defendant/cross-claim plaintiff, Premier Bank, and Hinds to return to Willett the 200 gold coins which Willett pledged as security for the aforementioned $75,000.00 loan. Willett also asserts the trial court erred in not permitting him to present evidence on the affirmative defenses of credits toward and extinguishment of the debts and, alternatively, in not granting him leave to file an answer to Hinds' original reconventional demand to assert these defenses.
Defendant/cross-claim plaintiff, Premier Bank, also appeals, maintaining the trial court erred in awarding Willett attorney fees in conjunction with his main demand. Premier Bank also contends the trial court erred in finding that Willett did not breach his obligation to mitigate his damages.
Hinds also appeals and, like Premier Bank, asserts the trial court erred in awarding Willett attorney fees and finding that he did not breach his mitigation obligation. He also contends the trial court erred in crediting the entirety of a $60,000.00 payment made by *198 Willett to the $75,000.00 loan. Hinds maintains that the proceeds resulted from the sale of two draglines which he and Willett coowned, and, therefore, only one-half of the proceeds, $30,000.00, should have been credited to the balance Willett owed on the $75,000.00 loan.
For the reasons which follow, we reverse the award of attorney fees to Willett. We also remand this case to the trial court for a full hearing on Willett's exception of prescription as to the $30,000.00 loan, which he filed for the first time in this court. In all other respects, we affirm the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
In September 1983, Willett and Hinds purchased construction equipment from Pat's Waterfront Construction Company, Incorporated and Pat Huval for $150,000.00. Hinds provided the entire purchase price in cash and, in turn, loaned Willett one-half of the amount, $75,000.00. They each had a onehalf undivided interest in the construction equipment. Willett executed a $75,000.00 promissory note dated September 27, 1983. On the back of the note, the following was handwritten: "200 kroners [sic] for coletrel [sic] for this note only. At floating prime." They intended to repair and refurbish the equipment and sell it at a profit.
Willett offered to place the 200 gold coins, known as kronor, in a safe deposit box as security for the loan from Hinds. The safe deposit box was leased from Premier Bank and Willett placed the kronor in the box. The safe deposit box lease agreement provided that, to allow access to the box, Premier Bank would need the signatures of both Willett and Hinds.
On November 16, 1983, Hinds sent a letter to Premier Bank by which the signature terms of the safe deposit box lease were changed. The letter states that Hinds' son, Johnny Hinds, could sign for him and Willett's son, Gary Willett, could likewise sign for Willett.
Also in 1983, Hinds loaned Willett another $30,000.00 at no interest. Thereafter, between 1983 and 1989, Willett paid Hinds a $5,000.00 cash payment and gave Hinds a generator and a hydraulic jack, which Hinds valued at $7,000.00. This $12,000.00 was credited by Hinds to the unsecured $30,000.00 loan. On September 14, 1987, Willett paid Hinds $60,000.00, the proceeds of the sale of two draglines which were part of the original purchase. Hinds applied $18,000.00 of this payment to the balance remaining on the $30,000.00 unsecured loan. He then applied the remainder, $42,000.00, to the $75,000.00 secured loan, with $12,000.00 applied to the principal and $30,000.00 to the interest.
On August 4, 1989 and October 9, 1989, Premier Bank allowed Hinds and his son, Johnny Hinds, to access the safe deposit box without the concurrence of Willett. The second time, Hinds removed the 200 kronor and brought them to his certified public accountant, Gerald Hebert. Hinds instructed Hebert to maintain possession of the coins, and Hebert placed them in his safe deposit box.
On May 28, 1994, Willett filed this suit against Premier Bank, Hinds, and his son, Johnny Hinds[1]. He alleged Premier Bank wrongfully allowed Hinds sole access to the safe deposit box and sought recovery for his mental anguish over his belief that Hinds removed the coins entrusted to Premier Bank.
Hinds answered, denying the allegations of Willett's petition and asserting that the safe deposit box agreement, as amended, allowed access thereto with any two of the four signatures on the card possessed by Premier Bank. The bank also filed an answer generally denying Willett's allegations.
On August 18, 1994, discovery depositions were taken. Hebert was subpoenaed to produce the 200 kronor which Hinds had entrusted to his possession. He did so. During Willett's deposition, Hinds' counsel offered to have the kronor returned to the original safe deposit box. Willett refused the offer, stating his impression that they were not safe there in the first place. Willett also denied signing the $75,000.00 note. He also said that, after the two draglines *199 were sold, he purchased Hinds' remaining interest in the equipment with a $50,000.00 loan from Premier Bank that he obtained in 1987 or 1988. Willett stated that he wants the 200 gold coins returned to him.
After the depositions, Hinds obtained possession of the 200 gold coins from Hebert. He took them to a casino, cashed them in, and proceeded to lose the entire amount by gambling.
On October 11, 1994, Hinds filed a reconventional demand against Willett seeking the $63,000.00 balance owed on the $75,000.00 secured loan plus interest from September 27, 1983 and attorney fees. Hinds also prayed that Willett's pledge of the 200 kronor be judicially recognized.
In response, on October 31, 1994, Willett filed peremptory exceptions of no right of action and prescription on the $75,000.00 loan. On November 28, 1994, Willett filed an amending and supplemental petition against Premier Bank and Hinds in which he asserted Hinds' liability for conversion of the 200 kronor. Willett prayed for compensatory damages and attorney fees.
In response to Willett's exceptions, Hinds then filed an amended and supplemental reconventional demand against Willett on January 26, 1995. The prescription exception was referred to the merits and the no right of action exception was later adjudged moot.
On February 2, 1995, Premier Bank answered Willett's first amended and supplemental petition, admitting that, on at least two occasions, Hinds accessed the safe deposit box without Willett's permission or signature. Premier Bank also maintained that Willett failed to mitigate his damages by not agreeing to have the 200 kronor returned to the safe deposit box. In cross-claim, Premier Bank asserted that, if it was found liable in judgment to Willett, it was entitled to full indemnity from Hinds.
On February 3, 1995, Hinds also answered Willett's amended and supplemental petition; Hinds denied Willett's allegations. He later amended the answer to assert Willett's failure to mitigate damages.
On August 1, 1995, trial on the merits commenced. The exception of prescription on the $75,000.00 indebtedness was tried first. The trial court ruled that the transaction was a pledge, not a personal loan, and denied Willett's exception of prescription. Willett orally moved for time to apply for supervisory writs and a stay of the proceedings. The trial court granted Willett ten days in which to prepare and file his writ application.
The trial proceeded on the merits. During Willett's testimony, he tried to present evidence that certain work he had done to improve the construction equipment should have been credited to the amount he owed to Hinds. Hinds' counsel objected, asserting that the purported testimony would amount to an expansion of the pleadings. The trial court agreed and sustained the objection. Willett again asked the trial court for leave to apply to this court for supervisory writs. The trial court granted the requested leave and stayed the trial pending this court's resolution of Willett's writ application.
On December 21, 1995, this court denied Willett's writ application. This court found no error in the trial court's ruling on the prescription issue and no abuse of discretion in the trial court's disallowance of evidence which would have expanded the pleadings to include defenses Willett had not pled in response to Hinds' original or amended and supplemental reconventional demands.
On January 23, 1996, Willett, for the first time, filed his answer to Hinds' reconventional demand. Therein, Willett asserted the affirmative defenses of extinguishment and fraud. He also re-urged the exception of prescription.
Trial of this matter commenced on April 10, 1996. After the presentation of evidence on Willett's main demand, the trial court ruled that, since the 200 kronor were the subject of a pledge, the conversion occurred when Hinds relinquished possession of the coins by cashing them in at the casino. The trial court denied Willett's exception of prescription, since Hinds' reconventional demand was filed within a year of the conversion. The trial court also determined that Willett proved Premier Bank breached the safe deposit box lease agreement. Additionally, *200 the trial court determined Willett acted reasonably in declining to have the coins returned to the original safe deposit box. The trial court denied the failure to mitigate defense asserted by Premier Bank and Hinds. Finally, the trial court granted Hinds' motion in limine to exclude evidence of the affirmative defenses asserted by Willett in his answer to Hinds' reconventional demand because the answer was filed without leave of court.
On April 11, 1996, the trial court heard evidence on Hinds' reconventional demand. The testimony conflicted about the nature of the loans, whether Willett signed the $75,000.00 note and whether Willett agreed to pay interest thereon. At the close of the hearing, the trial court ruled in favor of Willett and against Premier Bank and Hinds, in solido, that Willett is entitled to the return of his 200 kronor or their cash equivalent value. The trial court also determined that Willett is entitled to recover his costs and attorney fees attributable to his main demand from Premier Bank. On Premier Bank's cross-claim against Hinds, the trial court granted full indemnity for the entire damages, including costs and attorney fees. As to Hinds' reconventional demand, the trial court concluded that both loans were "no interest" in nature, finding insufficient proof of an agreed-upon interest rate. Applying Louisiana Civil Code article 1868, the trial court determined that Willett's $72,000.00 in payments should have been credited first to the secured $75,000.00 loan. Therefore, the court determined that Willett is obligated to pay Hinds $33,000.00 ($3,000.00 balance remaining on the $75,000.00 secured loan plus the $30,000.00 unsecured loan) plus interest from the date of judicial demand. The trial court also ruled that Willett's counsel would be allowed to file an affidavit regarding his fees and expenses incurred.
Willett's counsel then filed an affidavit and detailed hourly bill which reflected $17,692.31 in fees and expenses incurred for the entire litigation. Premier Bank and Hinds filed rules to traverse. After a hearing on the matter, the trial court determined that Willett is entitled to $10,830.00 in attorney fees from Premier Bank.
The trial court read and signed a judgment in accordance with oral reasons on August 29, 1996. Willett and Hinds suspensively appealed, and Premier Bank devolutively appealed. After Willett and Hinds each failed to post the requisite suspensive appeal bonds, their appeals were converted by this court to devolutive appeals. Willett filed exceptions of prescription in this court on the $75,000.00 indebtedness and, for the first time, on the $30,000.00 indebtedness.

LAW AND OPINION

Prescription
We first examine the prescription issues. Willett does not contest the trial court's finding, for which this court found no error in the prior writ application, that the $75,000.00 debt is in the nature of a pledge. A pledge "is a contract by which one debtor gives something to his creditor as a security for his debt." La.Civ.Code art. 3133. To perfect a pledge, the thing given to the creditor in pledge must be actually delivered to the creditor or to a third person whom the parties agree upon. La.Civ.Code arts. 3152, 3162.
This is an action on money lent which was secured by a pledge. It is subject to a three-year prescriptive period. La.Civ. Code art. 3494(3). As long as the thing pledged is in the actual or constructive possession of the pledgee, prescription does not run in favor of the debtor. Fouchi v. Fouchi, 442 So.2d 506 (La.App. 5 Cir.1983), writ denied, 445 So.2d 1235 (La.1984). The pledgee's retention of possession of the thing serves as a continuous acknowledgment of the obligation and renunciation of prescription. Shepard Realty Co. v. United Shoe Stores, Co., 190 So. 383, 193 La. 211 (1939); Cush v. Succession of Hailey, 344 So.2d 83 (La.App. 2 Cir.1977).
In the present case, the 200 kronor remained in the safe deposit box until Hinds removed them on October 9, 1989. Hinds then maintained possession of the coins until August 1994 when he cashed them in at the casino. Less than three months later, Hinds filed his reconventional demand on the $75,000.00 *201 debt. Therefore, the debt is not prescribed.
Willett filed the exception of prescription on the $30,000.00 loan for the first time in this court. It too is subject to the three-year prescription for actions on money lent. La. Civ.Code art. 3494(3). The parties agree that the loan was made at some point in 1983. Hinds first sued on this loan on January 26, 1995 in his amending and supplemental reconventional demand.
An exception of prescription can be filed for the first time in the appellate court if formally pleaded prior to submission of the case for decision. La.Code Civ.P. arts. 927, 2163; Hyde v. Hibernia Nat'l Bank in Jefferson Parish, 584 So.2d 1181 (La.App. 5 Cir.1991); In Re Ponchatalawa, Inc., 428 So.2d 993 (La.App. 1 Cir.1983). The plaintiff may demand that the suit be remanded to the trial court for a full hearing on the exception. La.Code Civ.P. art. 2163. In the present case, Hinds, the plaintiff-in-reconvention, has made such a demand. In two previous cases, this court has remanded for a hearing in the interest of justice at plaintiff's request. Carmouche v. City of Marksville, 94-122 (La.App. 3 Cir. 10/5/94), 643 So.2d 392; General Elec. Credit Corp. v. Bell, 499 So.2d 1029 (La.App. 3 Cir.1986). Conversely, the first circuit and a 1973 third circuit case held that an appellate court must remand the case upon plaintiff's demand for the trial court hearing on prescription. See Blanchard v. Southern Pac. Transp. Co., 93-1155 (La.App. 1 Cir. 4/8/94), 635 So.2d 742; Louisiana Bank and Trust v. Boutte, 286 So.2d 143 (La.App. 3 Cir.1973), appeal after remand, 298 So.2d 884 (La.App. 3 Cir.1974). The Blanchard court analyzed Code of Practice article 902, the source for Code of Civil Procedure article 2163, and two pre-Code of Civil Procedure cases interpreting that former article as requiring a remand.
Article 2163 clearly states that the plaintiff may demand a remand of the case for trial of the prescription exception. The plaintiff therefore had discretion to make such a demand. The article, however, is silent as to any mandate on the appellate court to remand the case upon the plaintiff's demand. We conclude that the article does not grant plaintiff an automatic right to remand upon his demand for such action. The appellate court has discretion to do so should the interests of justice require a full hearing.
In the case sub judice, we find that the interests of justice would be best served by a remand for a full hearing. Hinds' suit on the $30,000.00 debt was filed eleven-plus years after the loan was made. On the face of the demand, therefore, the debt is prescribed. Under these circumstances, it is Hinds' burden to show that prescription has not run through proof of suspension, interruption, or renunciation. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206. We, therefore, remand for the limited purpose of a hearing on whether this $30,000.00 obligation has prescribed.

Attorney Fees
On the attorney fees issue, Willett seeks an increase in the amount awarded, and Premier Bank and Hinds contend the trial court erred in awarding Willett attorney fees in the first place. Attorney fees are generally not due a successful litigant unless specifically provided for by statute or by contract. Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014 (La.1984); Lambert v. Byron, 94-854 (La. App. 3 Cir. 2/8/95), 650 So.2d 1201. A suit for breach of contract, absent a specific contractual provision for attorney fees, is not an exception to this general rule. If the parties fail to expressly provide an obligation to pay attorney fees, the law does not imply one. Rutherford v. Impson, 366 So.2d 944 (La. App. 1 Cir.1978), writ denied, 369 So.2d 140 (La.1979).
In the present case, the safe deposit box lease agreement does not specifically address attorney fees. Willett asserts that attorney fees are an element of damages Premier Bank is obligated to pay upon breach of the agreement. Specifically he relies upon paragraph eight of the agreement, which provides:
The Bank assumes no liability for contents of a box. The liability assumed is limited to ordinary care and diligence to *202 guard against unauthorized access to the box, and is assumed upon the express agreement that such access shall not be inferable from proof of partial or total loss of the contents.
This is insufficient to support an award of attorney fees. Willett's argument that his right to recover attorney fees is implicit in the agreement is without merit and, under the law, such an implication or inference is not allowed. We, therefore, reverse the $10,830.00 awarded by the trial court to Willett. Because we find attorney fees are not available under this contract or any statute, we need not address Willett's request for an increase in attorney fees.

Expansion of Pleadings
We next address Willett's contention that the trial court erred in not allowing him to present evidence of work he performed as proof of credits toward or full extinguishment of the debts. The trial court ruled that these affirmative defenses were not specifically pled by Willett and that his answer filed after commencement of trial without leave of court was untimely.
The trial court's disallowance of any evidence on these defenses has been before this court previously in Willett's writ application. It is therefore subject to the "law of the case" doctrine, which provides that "an appellate court ordinarily will not reconsider its own rulings of law in the same case." Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992). This is a discretionary guide and is inapplicable in cases where the prior decision was palpably erroneous or application of "law of the case" would result in manifest injustice. Id.
On full appellate review, we conclude that the trial court did not err in precluding Willett from presenting evidence on these defenses. Willett failed to specifically plead these defenses, as required by La.Code Civ.P. art. 1005, until he did so after commencement of the trial without first obtaining the court's leave. We therefore decline to change this court's prior ruling and, additionally, find that the trial court did not abuse its discretion in ruling that Willett's answer was not properly or timely filed.

Mitigation of Damages
Premier Bank and Hinds assert the trial court erred in finding that Willett did not breach his obligation to mitigate damages. La.Civ.Code art. 2002 provides:
An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.
The trial court determined that Willett acted reasonably in refusing Hinds' offer to return the 200 kronor to the safe deposit box because he believed they would not be safe in that location. The trial court concluded that, given the two previous unauthorized entries, Willett's belief and action were reasonable under the circumstances. We find no manifest error in this determination.

Allocation of Payments
Hinds appeals the trial court's allocation of the $72,000.00 in payments by Willett to the $75,000.00 secured debt. He also contends that the credit should be reduced by $30,000.00 to reflect his one-half interest in the $60,000.00 proceeds from the sale of the draglines. Hinds maintains that he erroneously credited the full amount as Willett's payment on his debt.
The trial court determined that no agreement was reached as to the payment of interest on the $75,000.00 secured loan. The trial court then applied La.Civ.Code art. 1868, which pertinently provides:
If all, or none, of the debts that are due bear interest, payment must be imputed to the debt that is secured.
In this regard, the trial court did not err.
Hinds did not include in his trial court pleadings an allegation that he is entitled to a $30,000.00 reduction in the credit assigned Willett due to his mistaken application of the entire $60,000.00 payment to the balance due on the loans. Hinds raises this issue for the first time on appeal. We, therefore, decline to address the merits of this *203 claim which he failed to plead to the trial court.

DECREE
For these reasons, we reverse the trial court's award of $10,830.00 in attorney fees to David Willett. Additionally, we remand this case to the trial court for a full hearing on Willett's exception of prescription as to the $30,000.00 obligation. In all other respects, we affirm the trial court's judgment.
Costs of this appeal are to be borne equally by David Willett, Premier Bank, and Cyril Hinds.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
NOTES
[1] Willett later dismissed the suit as to Johnny Hinds.