No. 930

First Circuit

**BOARD OF LEVEE COMRS. FOR ORLEANS LEVEE DIST. v. DALTON ET AL.**

(February 8, 1932. Opinion and Decree.)
(March 8, 1932. Rehearing Refused.)
(April 25, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Wilkinson, Palmer & O'Hara and George Piazza, of New Orleans, attorneys for plaintiff, appellant.

C. A. Blanchard, of Morgan City, attorney for defendants, appellees.

MOUTON, J. November 9, 1928, plaintiff board leased the trapping rights to defendants to all the lands of what is known as the Bohemian spillway.

The land is described in the lease as fronting on the Mississippi river between the lower line of the Bohemia plantation and the east bank of said river in the parish of Plaquemines down to the Guselich canal, and extending from the river to the bays and bayous that are a part of the sea, and it is further stated in the lease that this tract of land contains 32,000 acres, more or less.

The consideration for the lease was $1,000 per year, payable in advance, beginning with the signing of the contract November 9, 1928, and was for a period of three years, with the privilege of renewing thereafter for the same period of time.

The first payment of $1,000 was made in advance; defendants took possession of the premises on which they carried on their trapping operations until November 7, 1929, two days prior to the 9th of November, 1929, at which time another payment was to be made in advance for the ensuing year, as was required under the stipulations of the lease.

On November 7, 1929, John Dalton, defendant, says he received a letter from Emmet Alpha in which he claimed he had a lease of lands situated in the Bohemian spillway which defendant had leased from plaintiff board. Alpha's letter is in the record, and shows that he was claiming township 17 S., R. 15 east, situated in the Bohemian spillway under a "ten-year lease contract" from the Lake Borgne levee district. Dalton says Alpha exhibited his lease to him in New Orleans, where he (defendant) had gone on November 7, 1929, with the intention of paying next morning the $1,000, second installment on his lease, for the trapping rights of 1929.

Instead of paying the rent, as he intended, defendant submitted the Alpha letter to Chas. J. Donner, secretary of plaintiff board of commissioners. Meetings of the plaintiff board were held in February and March, 1930, and the minutes show that the board had grave doubts as to whether it had title to the land claimed by Alpha.

At the meeting held in March, 1930, as appears from the minutes kept by the board, it was proposed, as a compromise which was not consummated, that the disagreement between Dalton and plaintiff might be adjusted by Dalton agreeing to pay for the lands that were not those leased to Alpha; that a survey would be made, and the suit for the second annual payment on the lease would in the meantime be held in abeyance. These proceedings of the board indicate that it had serious doubts as to its title to the land comprised in the Alpha claim.

Dalton says Alpha threatened him with eviction from the land in question, and Alpha testifies he told Dalton, if "they went" on it, he would have them arrested.

Counsel quotes several decisions which say that ownership is not essential to make a lease valid. As a general proposition, it is well settled that a lessee cannot question or contest his lessor's title. This doctrine is recognized in Tippet v. Jett, 10 La. 362; Dennistoun v. Walton, 8 Rob. 213; Nicholls v. Byrne, 11 La. 173, cited by counsel for plaintiff.

In those decisions, however, it is said that a lessee sued for rent, and in undisturbed possession of the premises, under the lease, cannot contest the lessor's title. In most all of these decisions it is held that the lessee cannot contest the lessor's title when he is in "undisturbed possession of the premises." Where his posses-

sion is disturbed, he must therefore have the right to attack the lessor's title.

Article 2703, C. C. says:

"The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises," etc.

Here, Alpha was claiming a right to the premises, one of possession under his lease in contravention to a similar claim by defendants.

It has often been held that a person may let out the property of another, but in such a case, article 2682, C. C., says, he "warrants the enjoyment of it against the claim of the owner." This warranty of enjoyment means that, whether the lessor owns the property leased or not, the obligation is imposed upon him to cause the lessee to be "in a peaceable possession of the thing during the continuance of the lease." C. C. art. 2692. Possession is the life of the lease, and, if the lessee be disturbed therein, he has the right to contest his lessor's title.

In this case, the defendants' possession was disturbed by Alpha's claim, by his threat to institute suit and of arresting any one sent on the property by defendants. The action taken by plaintiff in the investigation of its title, its uncertainty as to its validity, also show that it considered that defendants had suffered a disturbance in their possession, and in which plaintiff failed to quiet him in before the expiration of the trapping season of 1929, and justified them in their refusal to pay the second note on their lease, unless plaintiff be entitled to relief under the provisions of article 2701, C. C., which says, when the premises have been stated to be "of greater extent than they in reality are, the lessee may claim an abatement of the rent, in the cases and subject to the provisions prescribed in the title: Of Sale."

The difficulty in this case would be to apply this rule of abatement invoked by plaintiff, conceding that it should govern herein in the disposition of the issues. In the minutes of the meeting of the plaintiff board, March 18, 1930, it there appears the proposition of the attorney of the board for a compromise was made, provided defendants were willing to pay for the lands leased, not including the lands claimed by Alpha under his lease, and that, if they agreed to settle on that basis, the board would have a survey made and would hold the suit in abeyance. This tentative offer by the board shows that a survey would have been necessary to determine the extent of the Alpha holdings. No survey was made, as no compromise was effected, and it is therefore obvious that the area of the Alpha claim is still undetermined.

Elam, engineer for the plaintiff board, stated he had made no survey of the lands contained in the Bohemian spillway, but testified that according to official maps there were about 33,000 acres in that area. He thereafter stated that, according to that computation, there were 4,300 acres in the entire acreage claimed by Alpha under his lease. Further on in his testimony, while testifying on this subject, he was asked as to what was the total area of land in T. 17 S., R. 15 E., which Alpha was claiming. His answer to that question is: "There is no official record of the area of that Township." Then he says the area of land in a township is about 12,000 acres, but as the land is marsh and mostly water, the acreage of half a township is only about 2,600 acres.

With evidence of that character and in the absence of a survey, it would be impossible for this court to make an accurate, or even a proximate, deduction based on a smaller acreage than was leased by defendants, in order that we might apply the rule of abatement for which counsel for plaintiff are contending.

We now pass to the claim in reconvention for a breach of the lease urged by Dalton, who appears to be the only defendant.

The record shows, as hereinabove stated, that defendant had possession of the premises during the trapping season of 1928-1929, and until October 7, 1929, when he refused to pay his rent. He is claiming expenses incurred by him in his trapping operations during that time which amount to a total of $7,052.

The items constituting this large claim are for services of the partnership estimated at $4,000, for boat hire, groceries, gasoline, incidental expenses, advertisement for trappers, traveling expenses, car fare, and such like. He is also asking for the reimbursement of the $1,000 paid for his lease of 1928-1929.

Defendant testifies that from the fur season of 1928-1929 he thinks he realized $300. He now desires to recoup himself, not only for the $1,000 but also for the large expenses he claims he incurred in a bad financial venture—if we are to judge from the sum he realized. If defendant had not been put in possession during the years 1928-1929, and he had been deprived of the enjoyment of the thing during that period, he might have laid claim for expenditures he had suffered to put his undertaking in operation, and for the $1,000 paid for his lease of the premises of which he had not enjoyed the possession.

His claim for these expenses is grounded on article 2696, C. C., which reads as follows:

"If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interrruption of the lease."

All of those expenditures occurred, if they ever were incurred, prior to the interruption of the lease, which occurred on November 9, 1929. As the evidence shows that he realized $300 from his trapping operations in 1928-1929, for which he claims to have spent $7,052 prior to the interruption of the lease, instead of suffering damages, if we are to be guided by the result of the enterprise, we must say that the interruption of the lease very probably saved him from further financial loss.

The foregoing reasoning is based on a mere assumption that defendant had established his claim to the various items constituting his demand for the $7,052.

The district judge, in a careful analysis of this evidence, remarked that these items had not been supported by proof of any vouchers, receipts, or checks, and denied their recovery.

We fully approve his finding. For the reasons stated in his written opinion, and for those above stated by us, we are of opinion that this demand for $7,052 was properly rejected.

In addition to his claim for the alleged losses that he sustained, presenting the issue above disposed of, defendant is claiming $20,000 for profits he avers he would have realized during the trapping seasons of 1929-1930 and 1931, and of which he claims he has been deprived, citing C. C. art. 1924, in support of that contention.

In the case of Schleider v. Dielman, 44 La. Ann. 462, 10 So. 934, 935, the court said:

"As a general rule the future profits of a contract cannot be included in the injury suffered by its breach, mainly for the reason that they depend upon so many and various contingencies that it is impossible for a court or a jury to arrive at any definite determination of the actual loss by any trustworthy method. They are open to the objection of remoteness as well as of uncertainty."

Similar expressions, in cases of this character, were given by the court in Mirandona v. Burg, 51 La. Ann. 1190, 25 So. 982, and in Blymer Ice Machine Co. v. McDonald, 48 La. Ann. 450, 19 So. 459.

The proof in this case, as we have before remarked, shows that out of an alleged expenditure of $7,052, incurred by defendant in the operation of his trapping enterprise, he had realized only $300.

Such a result affords no foundation whatsoever to support a claim of $20,000 defendant avers he would have realized as profits in the fur seasons of 1930 and 1931, of which he was deprived by the interruption of the lease. Such a claim has no foundation upon which it can rest, is too uncertain, remote, and conjectural to support a claim in damages.

Judging from the failure defendant suffered in his operations in 1928-1929, the interruption of the lease in 1929 was a fortunate circumstance that worked to his advantage, otherwise he might have persisted in his venture which might have ended in greater financial losses.

The court also rejected this claim for $20,000, and correctly.