JANVIER, Judge.
This suit has as its object the return to plaintiff of $500, paid by him to the defendants for the right to trap wild fur-bearing animals on certain land described in a written lease. The term of the lease was from November 20th, 1946, through March 31st, 1949. In addition to the cash paid, — $500—plaintiff agreed to pay over to the defendants a designated proportion of the proceeds of the trapping operations.
About twenty days after the commencement of the lease, the lessee abandoned the land, and, alleging that he had been threatened with arrest for trapping on the land and that the representative of the defendants (lessors), being told of this threat, had advised him to discontinue trapping operations, he brought this suit against the said lessors for the return of the money which he had paid.
The defendants (lessors) originally were Victor J. Von Schoeler, Waldemar A. Von Schoeler, Annabelle C. Von Schoeler, Deuel, M. A. Grace, Edwin H. Grace and Daniel H. Grace. One of the defendants, M. A. Grace, has died since the suit was in *83 stituted and a curator has been appointed to represent his vacant' estate.
The defendants, after exceptions had been overruled, filed answer admitting the execution of the lease and that the said amount had been paid, and admitting, too, that the lessee had advised one of them, Mr. M. A. Grace, that he had been threatened with arrest. However, they denied that the plaintiff was justified in abandoning the property.
In the Civil District Court for the Parish of Orleans there was judgment for plaintiff for $472.23 jointly against all of the defendants, and they have appealed devolu-tively.
Plaintiff has answered the appeal, praying that the judgment be so amended as to run solidarily against the several defendants.
The record shows that the plaintiff, a trapper living in the Parish of St. Mary, discovered by chance that there was a certain portion of land in the Parish of Terre-bonne, containing about 160 acres, which was not under lease to anyone for trapping purposes. He discovered also that the land probably belonged to the defendants and he therefore “contacted” one of them in Texas. The one of them, Mr. Von Schoeler, to whom he wrote, referred him to Mr. M. A. Grace, who was also one of the owners and who was an attorney practicing in New Orleans. The owners, including Mr. M. A. Grace, Mr. Edwin H. Grace and Mr. Daniel H. Grace, agreed to execute the lease. It was prepared by an attorney selected by the plaintiff.
Obviously the owners were fearful that there might be a dispute with others about the title or about the location of the boundary line of the property, so they caused to be inserted in the lease a provision reading as follows: “ * * * The Lessors do not warrant their title, and Lessee accepts the property without any warranty.”
The plaintiff testified that he had arranged with two trappers to do the trapping on the land; that about ten days after the trapping operations were commenced, he was ordered to leave the land by Mr. Henry Marmond of the Louisiana Land and Exploration Company, a corporation with which the lessors were then having a dispute over boundary. Plaintiff says that with a friend,- Mr'. Henry Billiot, he went to New Orleans and called on Mr. M. A. Grace, and advised him of this occurrence. He says that Mr. Grace, told him to go back on the land and that he • did so, and that a surveyor, Mr. Baker Smith, of Houma was sent out to survey the land, and after Mr. Smith had made the survey he told plaintiff that he had “throwed my land out in the bay * * *.” Plaintiff says that a few days after this, Mr. Marmond and the “officers” (apparently the Sheriff of the Parish or his deputies) told him: “ * * * we hate to have to do it, but if you give us trouble, we will have to pull you in to Houma,” and that the officers said that they would make charges against him.
Plaintiff says that he and Billiot again went to New Orleans to see Mr. M. A. Grace and that Mr. Grace then said: “Get off the land.” Plaintiff says that he did so. He says that at this conference nO‘ one was present except himself, Mr. Billiot, Mr. Grace, and a “girl” in the office. Plaintiff then called Mr. John Blasi, an attorney in New Orleans, and says that Mr. Blasi called someone over the telephone, believed to have been Mr. M. A. Grace, and after the telephone conversation, told Rulf, plaintiff, that “he had a good'case.”
Mr. Billiot corroborated Mr. Rulf as to what was said during the two visits to' New Orleans.
Mr. Rulf then testified that his first attorney delayed the matter too long to suit him, and that he then employed Mr. Herman Midió. Mr. Midlo wrote to the law firm of which Mr. M. A. Grace was a member, stating that he advised Mr. Rulf not to take the risk of being arrested and that, in addition, Rulf had left the land because he had been advised to do so by Mr. M. A. Grace. Mr. Grace answered the letter, denying that he had advised Mr. Rulf to leave the land and stating that, since no proceedings had been taken to dispossess Mr. Rulf, he could not, on behalf of the owners, agree to a cancellation of the lease.
The statement in the letter that no proceedings had been brought was based on the fact that in the lease" appeared the fol *84 lowing provisions, from which we have already quoted to some extent: “This lease is made by Lessors and accepted by Lessee for the sole purpose of exploiting said land for trapping and otherwise capturing fur-bearing wild animals thereon. The Lessors, do not warrant their title, and Lessee accepts the'property without any warranty. However, if Lessee should be deprived, of the use of said land under this lease, then and in that event Lessors shall return to Lessee the consideration paid by Lessee hereunder. If Lessee is deprived of the use of said land during a part of any trapping season a proportionate refund shall be. made. For the purposes of this provision, it shall be considered that the cash consideration for this lease is based on one-third (⅛) of the amount for each, trapping season. Although Lessors have not warranted land, if any proceedings are brought for the purpose of dispossessing Lessee, prompt notice thereof must be given to M. A. Grace, Hibernia Bank Building, New Orleans, Louisiana, and Lessors reserve the right at their election to defend Lessors’ right to use said property under this lease.”
Mr. Edwin H. Grace, testified that the only issue with the Land Company concerned the boundary, and that, at the time of the trial, he and the Land Company were still trying to settle that issue. He was asked: “You shared an office with your brother, Mat, as partner? ” He answered: “Yes, sir.” He was then asked: “To your knowledge did Mr. Mat Grace ever tell Mr. Rulf to stay off the land ? ” Fie answered: “He didn’t ever make such a statement.”
It is the contention of defendants that Mr. Grace did not advise the plaintiff to abandon the lease and that, in fact, he had no authority from the other owners to do so; that he was merely designated by them as the person to be notified if any “proceedings” were brought, and that, since no ceedings were brought, no notice of any kind was given or could be given to him, and that plaintiff had no right to abandon the land just because he was threatened with arrest.
It is conceded, however, that plaintiff was threatened with arrest, and it is not disputed that the surveyor, • who was sent out to properly locate the land on which plaintiff was to trap, told plaintiff that his land was “out in the bay.” Under the circumstances, it vyas of no great importance whether or not Mr, M. A. Grace told Rulf to abandon the land. Rulf could not read or write. He was threatened with arrest by the. parish authorities, and he reported the matter to the one person designated in the lease as the representative of the owners. Although the express designation of Mr. Grace was for the limited purpose of requiring that notice of any “proceedings” be given to him, we have no hesitation in saying that the plaintiff, an uneducated, illiterate trapper, thought that he had done all that he could do when he reported the threat to Mr. Grace. Even if Mr. Grace did not tell him to abandon the land, he obviously did nothing to protect him or to prevent the continuance of the threats of arrest. Surely Mr. Rulf was not bound to remain on the land and subject himself to the danger of being arrested.
In the syllabus of Board of Levee Commissioners for Orleans Levee Dist. v. Dalton, 19 La.App. 490, 139 So. 487, appears the following: “Lessee threatened with eviction and arrest by one claiming possession .under lease from another held justified in refusal to pay further rent, where lessor showed uncertainty as to its title (Civ.Code, arts. 2682, 2692, 2703).”
In inserting in the contract the reference to the fact that the lessors did not warrant the title, they no doubt had in mind the situation which was presented in Fabrigas v. Wood, 105 La. 1, 29 So. 367, in which the Supreme Court held that where the lessee is aware that the thing leased belongs to another, or that there is danger of eviction, he cannot recover damages if he is evicted. In that case, however, the Court held that he is entitled to reduction in his rent as a result of the partial eviction.
A lessor is bound to guarantee to the lessee peaceable possession of the leased premises. Defendants assert that in the case at bar there could be no such guaranty because the boundary dispute was known and its possible effect was guarded against by stipulations in the lease.
*85 It is true that, because of the lease provisions, it is highly improbable that the lessors could have been held liable for any damages which the plaintiff might have sustained had he been evicted .by civil proceedings, but surely the stipulation should-not be interpreted as providing that if the lessee should be prevented from using the land for the contemplated purpose, he should not have the right to demand the return of the rent which he had paid in advance.
Our conclusion is that he is entitled to the return of the rent paid and that, therefore, to this extent the judgment in his favor was correct.
While the record does not show it, we assume that he was awarded only $472.23 because he had occupied the land for a short time.
We pass then to a consideration of the question raised by plaintiff’s answer to the appeal; that the defendants should be held .solidarity liable for the return of the unearned portion of the lease money which had been paid.
Counsel for plaintiff direct our attention to Article '2113 of our Civil Code which provides that: “Every one of those who have conjointly contracted an indivisible debt, is liable to the whole, even though the obligation was not contracted in solido.”
Counsel refer also to Article 2692 of our Civil Code which provides that the lessor is under obligation to deliver the thing leased, to maintain it in proper condition, and to cause the lessee to be in peaceable possession during the continuance of the lease. And counsel say that obviously these three obligations are indivisible, since Article 2108 of our Civil Code clearly sets forth the distinction between divisible and indivisible obligations, and that since the obligation of the lessor is indivisible, lessors are liable in solido where they have not complied with their oblig'ations.
Counsel say that this particular question has not been passed upon in Louisiana,-but that the French Civil-Code of 1804 contains in Article 1217 the counterpart of Article 2108 of our Civil Code, and that the French commentators have, without hesitation, stated that the obligation of the lessor to the lessee is indivisible. Counsel' give the following translations from French Commentators :
7 Plániol et Ripert, Droit Civil, 408: “The obligation of the lessor to cause the lessee to peaceably enjoy the leased premises is also indivisible.”
7 Beudant, Cours de Droit Civil Francais, 660: “In lease the lessor ' is required to procure the effective possession to the lessee. The obligation of the lessee to pay the rent is divisible but that of the lessor is indivisible.”
Without finding it necessary to determine whether there could be solidary liability in two or more lessors for the damage sustained by a lessee who might be evicted from the leased premises, we reach the conclusion that there is not presented here the question of liability for damage, but merely the question of liability for the return of an unearned sum of money.
Here the parties, when they made the contract, feared the possibility that the lessee “should be deprived of the use of the land,” and they stipulated that if that should occur, the lessors “should return to the lessee the consideration paid * * *.” They said that, in that contingency, they would return a fixed sum of money. There was no indivisible obligation involved. '
It is never, presumed that; parties intend- to enter into solidary obligations. It must be so stated in the agreement, or the agreement must be so worded as to eliminate any other conclusion, or the solidarity must result from law. See Perez v. Leake, 169 La. 29, 124 So. 135; George Moroy Cigar & Tobacco Co. v. Henriques, La.App., 184 So. 403. See, also, Solidary Obligations, 25 Tul.L.R., at page 223: “On the other hand, there are no sacramental terms of solidarity dhd it is sufficient that the intention of the debtors to be bound solidarity appears in the contract. The rule that solidarity is never presumed is modified by several specific codal provisions which create solidarity as a matter of law.”
There was no express provision in this contract that the lessors should be *86 solidarity liable for the return of the rent money and it is not a conclusion that must be necessarily drawn from the wording of the contract. We think that it follows that the liability -is joint and not solidary.
Consequently, the judgment appealed from is. affirmed at the cost of appellants.
Affirmed.