221 So.2d 871 (1969)
SKYE REALTY COMPANY, Plaintiff and Appellee,
v.
DIVERSIFIED INSURANCE AGENCY, INC., et al., Defendants and Appellants.
No. 2646.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1969.
Rehearing Denied May 7, 1969.
*872 Gravel & Burnes, by Camille F. Gravel, Jr., Alexandria, for defendant-appellant.
Gold, Hall & Skye, by William E. Skye, Alexandria, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for past due and accelerated rent under a written lease of an office building. Plaintiff is the owner and lessor of the building. The three defendant corporations are alleged to be the lessees. From an adverse judgment, the defendants appealed.
The substantial issues on appeal are: (1) Are the defendant corporations estopped to deny that the persons who signed the lease on their behalf were authorized to do so? (2) Alternatively, have the defendant corporations ratified the lease? (3) Under the provisions of the acceleration clause, was written notice of failure to pay rent, and demand therefor, necessary to accelerate the remainder of the rental installments?
At the outset, a brief description of the relationships between the three defendants will aid an understanding of the facts. Diversified Insurance Agency, Inc., a Louisiana corporation, was organized in 1966 to sell life insurance. The chairman of its board was Mr. Kenneth Young of Tennessee, but most of the other incorporators lived in Louisiana. Its executive vice president was Mr. Robert Blake of Louisiana. We will refer to this corporation as Diversified of Louisiana.
Diversified of Louisiana was an "affiliate" of Diversified Insurance Services, Inc., a Tennessee corporation, the chairman of whose board was also Mr. Kenneth Young. This corporation, referred to as Diversified of Tennessee, generally directed the affairs of Diversified of Louisiana and instructed it as to the conduct of the business of selling life insurance.
Peoples Protective Life Insurance Company, referred to as Peoples, also a Tennessee corporation, is engaged in the business of writing life insurance. Diversified of Louisiana sold only insurance issued by Peoples.
After Diversified of Louisiana was organized in 1966 to sell life insurance issued by Peoples, Mr. Robert Blake, executive vice president of Diversified of Louisiana, commenced negotiations with Skye Realty Company, through its president, Mr. William Skye, to lease the office space in question. Mr. Robert Smith, III, a vice president of Peoples, came to Alexandria in December of 1966 and inspected and approved the premises to be leased. Mr. Young, chairman of the board of Diversified of Tennessee, also came to Alexandria and participated in the organization of the new agency.
By an instrument dated December 9, 1966, Skye Realty Company leased to Diversified Insurance Agency, Inc., of Louisiana, an office building in Alexandria, for a term of six years, beginning January 1, 1967 at a monthly rental of $185, payable in advance on the 1st of each month. The lease contained an acceleration clause which will be discussed in more detail later. There was also a provision with reference to utilities that the lessor would pay for water and gas and the lessee would pay for electricity.
Also appearing as parties to the lease were Peoples Protective Life Insurance Company of Tennessee, represented by R. B. Smith, Jr., chairman of its board of directors, and Diversified Insurance Services, Inc. of Tennessee, represented by *873 George T. Williams, its secretary and treasurer. The lease states that these two parties "hereby join as lessees herein and bind themselves jointly, severally and in solido with the original lessee named above * * *"
Skye Realty Company made certain alterations in the building for its new tenant, at a cost of $2,256. Apparently these alterations were made before Skye actually received a copy of the lease signed by all three lessees.
The lessees commenced occupancy in January, 1967. The furniture and furnishings moved into the offices were owned by Peoples and furnished to the agency.
When Skye received the signed lease in January of 1967, there were no resolutions of the respective boards of directors to show authority for Robert B. Smith, Jr. to sign for Peoples, nor for George T. Williams to sign for Diversified of Tennessee. On January 25, 1967, Mr. Skye wrote a letter to these two gentlemen requesting appropriate resolutions of authorization.
Mr. Skye never did receive the requested resolutions. However, Mr. Skye did receive a letter, dated March 8, 1967 from Mr. Jack H. Davis, an attorney of Nashville, Tennessee, stating that he was general counsel for Peoples and for Diversified of Tennessee, and that Mr. Skye's letter of January 25, 1967 had been referred to him for handling. In this letter Mr. Davis states: "* * * although my clients executed the aforementioned agreement in accordance with your wishes, (and I can assure you that the individuals who subscribed their names had authority to do so) to comply with your demand for evidence will cause an additional and unnecessary burden to a staff which already has an extremely busy schedule."
The evidence also shows that after the insurance agency was opened in Alexandria at the leased premises, several salesmen were recruited, sent to Nashville, Tennessee for training by Peoples and then licensed as agents on forms provided by Peoples.
The new agency in Alexandria paid the monthly rentals of $185 from January through May of 1967. On May 8, 1967, Skye wrote a letter requesting that the three defendant lessees agree to an amendment to the lease whereby the rent would be increased to $205 per month and the lessor would assume the payment of electricity and all other utilities. This amendment was never executed by any of the lessees. However, Diversified of Louisiana did pay a rental of $205 for the months of June through September, 1967.
When the rent due October 1, 1967 was not paid, plaintiff filed this suit on October 18, 1967, demanding the accelerated rent in the sum of $12,910, (under the lease amendment) together with interest and attorneys fees. The furniture and furnishings in the building were sequestered. Later the defendants secured the release of the furniture from sequestration by posting bond. The evidence shows that representatives of Peoples picked up the furniture for shipment back to Tennessee.
All of the facts set forth above are shown by evidence introduced at the trial during the presentation of plaintiff's case. The defendants were represented at the trial by counsel but presented no evidence.
The first issue is whether the persons who signed for the defendant lessees were actually authorized by the respective corporations to do so. As we understand plaintiff's brief, it does not rely on actual authority. As stated above, plaintiff was never able to obtain copies of the resolutions of the respective boards of directors authorizing the signatures. Plaintiff relies on estoppel, and alternatively ratification, to show that the lease is binding on the three lessees.
A statement of the general rule that a principal may be estopped to deny the authority of his agent is found in 3 *874 Am.Jur.2d 479-480, Agencies, Section 76, as follows:
"Stated in terms of estoppel, the rule is that where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he was apparently clothed. This rule has been based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss."
Ratification, as applied to the law of agency, is the adoption or affirmance by a principal of the acts of his agent, either expressly, as by a written act, or impliedly, as by acceptance of the benefits of the contract. 3 Am.Jur.2d 548-561, Agency, Sections 160-175.
These general principles have been recognized in many Louisiana cases. For instance, Gueydan v. T. P. Banch Company, 156 La. 397, 100 So. 541 (1924) contains this language:
"It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may not, any more than an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. Cusachs, Ltd., 114 La. 744, 38 South. 539; Gair v. Columbia Rice Co., 124 La. [193] 194, 50 South. 8; Boudreaux v. Feibleman, 105 La. [401] 404, 29 South. 881."
In Goldman v. Greater Louisiana Corporation, La.App., 126 So.2d 771 (4th Cir. 1961) the defendant corporation's sales director ordered certain materials for which the defendant refused to pay on the grounds that he was not authorized. The court held:
"Where one, by acts or conduct, has knowingly caused or permitted another to act within the latter's apparent authority as his agent to the injury of third persons who themselves have acted in good faith and with reasonable prudence, he is estopped from denying the agency or the authority. See Vicknair v. Bonneval, La.App., 47 So.2d 57; Laroque v. Ovalasiti, La.App., 13 So.2d 747; 19 C.J.S. Corporations § 996."
Applying these general principles to the facts of the present case, we think the doctrines of estoppel and ratification are applicable here. As to the defendant, Peoples Protective Life Insurance Company, they sent their representative, Mr. Robert Smith, III, one of their vice presidents, to Alexandria, to inspect and approve the premises before the lease was signed. From this, Skye reasonably believed that Peoples knew of the proposed lease and consented to it. Then subsequently the lease was actually signed by Mr. Robert Young, Jr., chairman of the board of Peoples. The importance of his position with the corporation would certainly lead an ordinarily prudent person to believe that he was authorized to sign a lease of offices for a local agency. Furthermore, furniture and furnishings belonging to Peoples was later moved into the premises. The offices were then used to sell life insurance written by Peoples.
The letter from Mr. Davis, general counsel for Peoples, actually states that Mr. Robert B. Smith, Jr. had authority to sign the lease on behalf of Peoples. Thereafter, Mr. Skye certainly had a right to reasonably believe that Smith was authorized. *875 Under the circumstances, we think the corporation held out Mr. Smith as being authorized to sign the lease and that Mr. Skye acted with reasonable prudence in believing this.
Furthermore, Mr. Skye relied on this ostensible authority to his detriment. He performed the renovations to the building to which he had agreed. He allowed the building to be used under the terms of the lease.
With reference to Diversified of Tennessee, the lease was signed on their behalf by Mr. George T. Williams, secretary and treasurer of the corporation. The evidence, of course, shows that during the period of negotiations for the lease, representatives of this corporation came to Alexandria and talked to Mr. Skye and approved the premises to be leased. Their general counsel, Mr. Davis, expressly states in his letter that Mr. Williams was authorized. Mr. Robert Blake testified that every Monday morning he talked to Mr. Young, chairman of the board of Diversified of Tennessee, about the affairs of its affiliate, Diversified of Louisiana. On these occasions the lease was discussed. Of course, the building was used for the purposes of the business of Diversified of Tennessee. Under the circumstances, we think this corporation, Diversified of Tennessee, also held out its agent, Mr. Williams, as having authority and that this was relied on by Mr. Skye.
The same holds true for Diversified of Louisiana. Mr. Robert Blake, who signed the lease on its behalf, is its vice president and general manager. This corporation actually paid the rent from January 1 through September of 1967. The corporation held out Mr. Blake as being authorized to sign, and it used the premises.
Under the general principles of both estoppel and ratification, the original lease is binding on the three defendants.
However, with regard to the amendment to the lease which was attempted in October of 1967, increasing the rent from $185 to $205 per month, this was never signed by anyone on behalf of any of the three defendants. Nor is there any basis for the application of estoppel or ratification to bind the defendants to the lease amendment. This proposed amendment was not submitted until the middle of May, 1967, and the premises were vacated by the defendants a few weeks thereafter. In this regard, the judgment of the trial court must be amended to reduce the award to $11,655 (63 remaining monthly rent installments of $185).
The final issue is whether, under the provisions of the acceleration clause, it was necessary that lessor give written notice to the lessees, notifying them of their failure to pay the rent due on October 1, 1967, and placing them in default as a prerequisite to acceleration of the remaining installments. The lease provisions in question are contained in paragraph 9 which reads as follows:
"If Lessee should refuse or fail to pay any installment of the rental under the provisions of this lease, or should the Lessee be in default in the performance of any covenants of this lease on his part to be performed, and should such default continue for a period of five (5) days after written notice by the Lessor to the Lessee setting forth the default complained of, the Lessor may, at its option, either terminate this lease or declare all remaining rental installments for the remainder of the lease due and payable immediately; provided, that in the event the Lessor decides to terminate this lease, written notice thereof to the Lessee shall be given at least ten (10) days prior to the termination date, said ten (10) days to begin running with the receipt of the notice of termination by the Lessee. Upon the expiration of said ten (10) day period, Lessor shall have a right to resume occupancy of the leased premises without any further formalities and without resorting to judicial process."
*876 The trial judge has correctly construed the quoted language in the following portion of his well considered written opinion which we adopt as our own:
"`A reading of this paragraph clearly shows that written notice was not required in the event the lessee should fail to make rental payment, but was only required in the event the lessees were in default in the performance of other covenants of the lease to be performed by them. The acceleration clause says that the rent may be accelerated for two things, one was that if the lessee should refuse or fail to pay any installment of the rental under the provisions of the lease, and the other was in the event the lessees were in default in the performance of any covenants of the lease on their part to be performed and should such default continue for a period of (5) days after written notice by the lessor to the lessees setting forth the default complained of. This clearly shows that the written notice only applies to some default other than the non-payment of rent, and this default must be spelled out in writing by the lessor to the lessees, and the latter be given an opportunity to remedy the default. The only reason for this provision is that without written notice, the lessees could not know what default the lessor was complaining of, since there were numerous covenants in the lease which were to be performed by the lessees, other than payment of the rent.'"
The final issue is procedural. The record shows that plaintiff's petition simply alleged the written lease and defendants' answer denied it. There were no pleadings prior to trial expressly raising the issues of estoppel or ratification. During the trial the defendant objected to all evidence introduced for the purpose of proving estoppel on the grounds that it went beyond the pleadings. At the conclusion of the trial, the plaintiff was allowed to file, over defendants' objection, a "Plea of Estoppel", alleging generally the facts set out above.
Defendant then moved for a continuance on the grounds that he needed additional time to secure evidence to meet the new plea of estoppel. The court did not rule on the motion for continuance, but indicated one would be granted if defendants found evidence justifying a continuation of the trial. The trial then ended without defendants presenting any evidence.
The applicable law is found in LSA-C.C.P. Article 1154, which reads in pertinent part:
"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
Tate, Amendment of Pleadings in Louisiana, 43 T.L.R. 211 at 228, discusses these provisions as follows:
"The last two sentences of Article 1154 regulate a second type of trial amendment procedure, i. e., when evidence is objected to at the trial as beyond the issues raised by the pleadings. If the objection is valid, the article contemplates that the court should allow the pleadings to be amended to permit admission of the evidence, in the absence of real prejudice or surprise to the opponent. If needed to enable the opponent to meet such evidence, a continuance should be granted."
Under this construction of Article 1154, the trial judge correctly allowed the amendment to the pleadings to conform to evidence already in the record but subject to objection. There was no real prejudice to defendants, nor do we think they *877 were actually surprised that estoppel and ratification were going to be issues in the case. Even if defendants were surprised, they did not at the time of their motion for a continuance, nor in their subsequent motion for new trial, state what further evidence they desired to introduce to resist the plea of estoppel. The remarks made by the trial judge indicate that if defendants had, prior to his decision, shown what evidence they desired to introduce, he would have allowed it. Clearly, there was no abuse of the trial judge's discretion as to a continuance.
For the reasons assigned, the judgment appealed is amended to reduce the award for accelerated rent from the sum of $12,910 to the sum of $11,655. Otherwise than as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed, as amended.
Rehearing denied.
FRUGÉ, J., votes for rehearing.