409 So.2d 1274 (1982)
John C. BRAY, Plaintiff-Appellee,
v.
ARTHUR TREACHER'S FISH & CHIPS, INC., et al., Defendant-Appellant.
No. 14749.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1982.
Writ Denied March 19, 1982.
*1275 Peatross & Greer by Charles Peatrose, Shreveport, for plaintiff-appellee.
Gillespie & Jones by Lyman L. Jones, Jr., Metairie, for defendant-appellant.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is an action on a lease by the lessor, John C. Bray, against the lessee, Arthur *1276 Treacher's Fish & Chips, Inc., and its surety, National Diversified Corporation, for all the rent due under the lease which the lessor accelerated because the tenant failed to pay the insurance on the premises as required by the lease. The defendants appeal from a judgment against them. We affirm.
The Facts
In November, 1969, Bray leased a location on Hearne Avenue in Shreveport, Louisiana, to Treacher's for the operation of a fast food, fish and chips restaurant. The lease contained the following provisions relative to insurance:
"12. Tenant at its expense shall obtain and during the term of this lease or any extended period thereof, keep in force a policy or policies of fire insurance, with extended coverage, in an amount equal to the full replacement cost of the building on the demised premises, naming the Landlord as additional insured. Such policy may also have a mortgage clause in favor of any mortgagee of the demised premises to whose mortgage this lease shall be subordinate as hereinafter provided. Such insurance policy may also contain, at Tenant's option, a waiver of subrogation provision. In the event of loss covered by such insurance, the proceeds shall be paid to Landlord or Landlord's mortgagee, as their interests may appear. Tenant shall also obtain, at its cost and expense, and keep in force during the term of this lease or any extension thereof, public liability insurance with limits of $250,000.00 per person and $500,000.00 per accident and $25,000.00 for property damage, which policy of liability insurance shall name both the Landlord and Tenant as assureds. Upon failure of Tenant to furnish any policy of insurance as above set forth, Landlord, may at its option, obtain the same and the premium therefor shall immediately become due and payable as additional rent." [emphasis added]
The lease contained the following provisions as to the lessor's rights in case of a default by the tenant:
"18. If Tenant shall default in the payment of any rent or additional rent and such default shall continue for more than fifteen days after Landlord has given Tenant written notice of such default, or if Tenant shall default in the observance of any of the other terms, covenants or conditions of this lease and such default shall continue for more than thirty days after written notice of such default, or if such default shall be of such character that it cannot be completely cured within thirty days, and if Tenant shall not have commenced and shall not thereafter proceed with reasonable diligence to cure the same, or if Tenant shall make an assignment for the benefit of creditors, file a voluntary petition in bankruptcy, be by any court adjudicated a bankrupt, then, upon the happening of any one or more of the defaults or events above mentioned, this lease and the term hereof shall, upon the date specified in a notice, which date shall not be less than ten (10) days after the mailing of such notice by Landlord to Tenant, wholly cease and terminate, with the same force and effect as though the date so specified were the date hereinabove set forth as the date of the expiration of the original term of this lease and thereupon Landlord may re-enter and have possession of the premises and/or may recover possession thereof in the manner prescribed by the statute relating to summary proceedings. Notwithstanding such re-entry or the dispossession of Tenant by summary proceedings, Tenant shall nevertheless remain and continue liable to Landlord in a sum equal to all rent and additional rent herein reserved for the balance of the term hereof originally demised, or if the extended term of this lease shall then be in effect, for the balance of such extended term. Landlord may relet the demised premises and may alter and repair same for the purpose of such reletting and Tenant shall at all times remain liable for the difference between the rent and additional rent reserved under this lease and the rent obtained as the result of any such reletting *1277 and for the cost of such repairs or alterations. In the event Tenant shall default at any time, in addition to the remedies set forth above, Landlord may at its option, declare all unmatured rental payments hereunder to be due and exigible. All past due rent shall bear interest at the rate of 8% per annum from its due date until paid. In the event it is necessary for Landlord to retain an attorney to collect past due or matured rental, Tenant agrees to pay the reasonable fees of such attorney. [emphasis added]
The evidence shows that Bray and Treacher's generally had a good relationship. However, on at least two occasions prior to the circumstances on which this suit is based Bray learned that the premises were not insured as required by the lease. On each occasion insurance was quickly obtained, but after the second incident Bray informed Treacher's that he did not expect this problem to continue to recur.
In early May, 1978, Bray again learned that the premises were uninsured. Bray attempted to contact Treacher's by telephone about the situation, but was unable to do so. Bray arranged for insurance coverage and informed Treacher's by certified mail on May 10 that the property had been uninsured, that the lease had been violated and that he had obtained insurance whose cost he expected to be paid as additional rent. The last paragraph of the letter stated:
"Please be advised that we are taking out such insurance and are hereby advising you that the premium is due this date as additional rent and that we consider you, as the Tenant, to be in default of your lease."
The letter of May 10 did not include the specific cost of the insurance.
On May 26, Bray sent Treacher's a second letter, again by certified mail, notifying it of the cost of the insurance, $985, and demanding payment of the additional rent by June 10. The letter also informed Treacher's that, should it fail to pay the additional rent, Bray would avail himself of his rights under the lease provisions relating to tenant defaults.
Bray received no response from Treacher's before June 16 and on that day filed this suit exercising his option to accelerate the future rentals. Bray also sought the cost of the insurance as additional rent, interest and attorney's fees as provided for by the lease in his action.
On June 27 Bray received a check for $985 from Treacher's. On June 28 Bray received a certified letter dated June 21 informing him that a check for the additional rent was being forwarded under separate cover.
Bray also received on June 28 a certificate of insurance which purported to show coverage retroactive to May 10. Treacher's also later claimed that the property had been covered since August 31, 1977 under its policy with Nationwide Mutual Insurance Company. This assertion is based on an alleged unwritten policy of Nationwide to extend insurance coverage to unknown locations of its national accounts for lengthy periods of time. It is not contended that there is coverage under the written terms of the policy.
After a trial on the merits the district judge found that Treacher's had violated the lease by failing to maintain insurance on the premises. He granted judgment against the defendants for the additional rent, accelerated future rent, interest and attorney's fees.
The defendants appealed and set out five assignments of error. First, that the trial court erred by awarding punitive damages. Second, that the trial court erred in concluding that the property was uninsured. Third, that the trial court erred in holding that Treacher's received proper notice of its failure to provide insurance. Fourth, that the trial court erred in holding that defendant was properly placed in default. Fifth, and finally, that the trial court erred in holding the defendants' breach of contract to be irreparable. We will consider each assignment separately.
ASSIGNMENT NO. 1
The appellants contend that the district judge erred by awarding accelerated *1278 rents because this constituted an award of punitive damages. We agree that punitive damages are generally not allowable in Louisiana. Ricard v. State, 390 So.2d 882 (La.1980). However, the merit of this assignment depends on whether appellants are correct in asserting that accelerated rents are punitive damages.
Clauses providing for the acceleration of future rent in case of breach are lawful and binding on the parties. Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211, 190 So. 383 (1939); Succession of Israel, 154 So. 487 (La.App.Orl.1934); Skye Realty Co. v. Diversified Insurance Agency, Inc., 221 So.2d 871 (La.App. 3d Cir. 1969). Such clauses have been enforced by this circuit. Redline v. Snodgrass, 8 La.App. 19 (La.App. 2d Cir. 1928). We conclude that the award of accelerated rents was not an award of punitive damages. This assignment is without merit.
ASSIGNMENT NO. 2
The defendants assign as error the conclusion that there was no insurance.
Contracts have the effect of law on the parties to them. LSA-C.C. art. 1901.[1] Contracts are to be interpreted to give effect to the intent of the parties. LSA-C.C. art. 1945.[2]
The district court, in its written reasons for judgment, said:
"Lessee, Treacher, has failed to maintain the policy required by Paragraph 12 in full force and effect."
This is a finding that Treacher's failed to maintain insurance within the intent of the parties under the lease. That is a factual conclusion which we may not disturb absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Treacher's contends that the property has been covered since August 31, 1977 under its policy with Nationwide. There is no coverage under the written terms of the insurance contract between Treacher's and Nationwide. The alleged coverage is based on a supposed unwritten policy of liberality by Nationwide in favor of its national accounts. Because of this unwritten policy Nationwide would have supposedly broadly construed its undisclosed locations coverage to cover the Hearne Avenue location.
Appellants contend that the trial judge ignored the testimony of their witnesses in concluding that there was no coverage. That is incorrect. The district judge's reasons for judgment show that he was aware of that testimony and considered it, but was unpersuaded by it. The trial judge has considerable discretion on credibility determinations and questions of fact. Kirklin v. Winn-Dixie Louisiana, Inc., 391 So.2d 87 (La.App. 4th Cir. 1980). The trial judge's rejection of the testimony as to Nationwide's alleged unwritten policy of liberality was well within that discretion.
Treacher's also claims coverage by virtue of its effort to have the Hearne Avenue location specifically added to its policy with Nationwide. In accord with this effort Treacher's obtained on June 19 a certificate of insurance purporting to show retroactive coverage to May 10. This coverage was not accepted by Nationwide until July 20.
*1279 This retroactive coverage does not fulfill the lease requirement that the lessee maintain insurance. The obvious intent of the provisions requiring that the leased premises be insured is to protect the parties against loss occasioned by damages to the premises. Obtaining retroactive coverage would not give effect to that intent. This retroactive coverage amounts to nothing more than attributing part of the premium for coverage to days already past when no loss occurred. The parties would derive no benefit from such coverage since they would gain no protection by it.
Assuming that the agent who issued the certificate of insurance on June 19 had the power to bind Nationwide to the coverage before Nationwide accepted the coverage on July 20 (and this fact is established in the record only by the testimony of the issuing agent) the premises would have been uninsured from prior to May 10 until June 19 if plaintiff had not immediately obtained the insurance.
At the time Treacher's obtained the retroactive coverage Treacher's primary problem was not getting insurance on the property, but paying for that which Bray had already secured. The trial judge was correct in concluding that Treacher's had failed to maintain coverage within the intent of the lease.
Assignment number two is without merit.
ASSIGNMENT NO. 3
The appellants assign as error the finding that Treacher's received proper notice of the failure to provide insurance.
The defendants seem to complain that Bray did not give them some general notice of their failure to provide insurance. The notice of failure to provide insurance was fulfilled by plaintiff's letter of May 10.
Bray's first letter cites the provisions of the lease which require the lessee to maintain insurance on the property. The letter states that the property had been uninsured, that the lessor had exercised his option to obtain insurance when the lessee failed to do so, that the cost of the insurance was due as additional rent and that the lessor considered lessee to have violated the lease. This letter gave Treacher's more than adequate notice of its breach of the lease by failing to maintain insurance.
ASSIGNMENT NO. 4
Appellants assert that there was no proper putting in default. The lease provided that the premiums for any insurance purchased by the lessor because the lessee had failed to insure the property were "immediately due and payable as additional rent." Bray's letter of May 26, received by Treacher's on June 6, informed Treacher's of the amount due as additional rent, $985, and demanded its payment by June 10.
A party may be put in default by a demand in writing. LSA-C.C. art. 1911.[3] Such a demand is effective from the time of delivery. Laville v. Rightor, 17 La. 303 (1841). The putting in default should be made at or after the time stipulated for performance of the obligation. Southern Construction Co. v. Housing Authority, 250 La. 569, 197 So.2d 628 (1967). To put in default a letter need only let the debtor know that his performance is expected and that the creditor stands ready to perform any obligation he has. Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646 (1910); Fox v. Doll, 221 La. 427, 59 So.2d 443 (1952).
Treacher's obligation to reimburse Bray for the insurance premium was due immediately upon Bray's purchase of the *1280 insurance. Plaintiff's letter of May 10 which was received by Treacher's on May 17, may have adequately notified Treacher of its default and triggered the commencement of the fifteen day delay, even though it failed to state the amount plaintiff paid as premium for the insurance. This letter advised Treacher's of its violation of the lease by the failure to maintain the insurance and specifically stated that Treacher's was in default. A contention could be made that at this point Treacher's with sufficient notice of its default had the duty to find out the amount of the premium for the insurance and pay it, and plaintiff was not required to give Treacher's the specific information as to the cost of the insurance as a condition precedent to the commencement of the fifteen day delay allowed Treacher's by the lease to cure the defect. However, we find it unnecessary to base our decision upon the grounds that the fifteen day delay commenced upon Treacher's receipt of the May 10 letter because Treacher's failed to cure the default within fifteen days following its receipt of plaintiff's May 26 letter which it received on June 6.
Treacher's did not pay the rent on or before June 21. Treacher's sent Bray a letter on June 21 informing him that a check for the additional rent was being forwarded under separate cover. The envelope containing the check had postage placed on it by means of a postage meter and the meter stamp was not placed on the envelope until June 22. Since the postage was not placed on the envelope until after the delay had run, it could not have been mailed within the fifteen days permitted Treacher's by the terms of the lease to cure the default.
The suit was filed on June 16 demanding the additional rent and accelerating the unpaid rental installment. The lease specifically authorized plaintiff to accelerate the rent upon any default by Treacher's:
"In the event the Tenant shall default at any time, in addition to the remedies set forth above, the Landlord may at its option declare all unmatured rental payments hereinunder due and exigible."
This suit was filed ten days after the defendant had received the notice of default contained in plaintiff's letter of May 26 but five days before the elapse of the fifteen days that the lease gave Treacher's to cure the default and for this reason was premature if plaintiff's letter of May 10 is construed as not triggering the commencement of the fifteen day period for curing the default. Defendants remedy to the premature suit was to have filed an exception of prematurity which is a dilatory exception authorized by LSA-C.C.P. art. 926.[4]
Defendants failed to file the exception of prematurity and for that reason any contention by it that the suit was premature because it was filed before the elapse of fifteen days following its receipt of notice of default is waived. Martin v. Watson, 273 So.2d 677 (La.App. 1st Cir. 1973); May v. Southland Corp., 341 So.2d 421 (La.App.3d Cir. 1976); Texas Gas Transmission Corporation v. Pierce, 192 So.2d 561 (La.App.3d Cir. 1966); Pringle Associated Mortgage Corporation v. Eanes, 211 So.2d 399 (La. App.1st Cir. 1968).
Assignment number four is without merit because the defendants failed to cure their default within the fifteen days following receipt of notice of default and waived any contention they may have had that the suit was premature by failing to file an exception of prematurity.
ASSIGNMENT NO. 5
This assignment complains that the trial judge should have found defendants' breach to have been cured by the payment of the insurance premium and the securing of insurance coverage.
*1281 An obligor cannot cure his default merely by performing the principal obligation. He must also perform the accessory obligations which have accrued to the obligee by virtue of the default in order to cure it. Litvinoff, Louisiana Civil Law Treatise, Vol. 7, 435.[5]
When defendants defaulted Bray acquired and then exercised the right to accelerate the future rent. Therefore, to cure its default it was necessary for Treacher's to pay the additional rent and the accelerated future rent. Treacher's sent a check for the additional rent alone. This assignment is without merit.
The judgment appealed from is AFFIRMED. All costs of this appeal are assessed against appellants.
NOTES
[1] C.C. art. 1901Agreements legally entered into have the effect of laws on those who have formed them [Agreements formed according to law bind those who make them].

They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith.
[2] C.C. art. 1945Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:

FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.
FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
[3] C.C. art. 1911MANNER OF PUTTING IN DEFAULT. "The debtor may be put in default in three different ways: by the term [terms] of the contract, by the act of the creditor, or by the operation of law:

1. . . .
2. By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.
3. ..."
[4] C.C.P. art. 926The objections which may be raised through the dilatory exception include, but are not limited to, the following:

(1) Prematurity;
(2) Want of amicable demand;
....
All objections which may be raised through the dilatory exception are waived unless pleaded therein.
[5] "As the obligee has a right to those accessory obligations because of the default incurred by the obligor, the latter cannot avoid the consequences of his failure by offering to perform just the principal obligation. His late tender cannot be effective without the consent of the creditor, who has now the choice of seeking, or accepting, performance plus damages for delay, or of seeking the dissolution of the contract in the proper case."